UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUAN BORDAS
     Plaintiff,

V.                                       Civil Action No. 08-00339 (JDB)

DEPARTMENT OF JUSTICE
d/b/a/ DRUG ENFORCEMENT ADMINISTRATION.

## DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

United States Department of Justice component, the Drug Enforcement Administration

(DEA), through and by undersigned counsel, hereby submit this Motion to Dismiss and for

Summary Judgment pursuant to Rule12(b)(1) and 12(b)(6), and Rule 56 of the Federal Rules of

Civil Procedure.

Plaintiff should take notice that any factual assertions contained in the affidavits and other

attachments in support of Defendant's motion will be accepted by the Court as true unless the

Plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in

the Defendants' attachments. *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), Local Civil Rule

7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent
> to testify to the matters stated therein. Sworn or certified copies of
> all papers or parts thereof referred to in an affidavit shall be
> attached thereto or served therewith. The court may permit
> affidavits to be supplemented or opposed by depositions, answers
> to interrogatories, or further affidavits. When a motion for
> summary judgment is made and supported as provided in this rule,
> an adverse party may not rest upon the mere allegations or denials
> of the adverse party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must set forth
> specific facts showing that there is a genuine issue for trial. If the
> adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

In support of this motion, Defendant respectfully refers the Court to the accompanying

Statement of Material Facts Not In Genuine Dispute, Memorandum of Points and Authorities in

Support, declaration from the agency and Vaughn index.  A proposed Order consistent with this

Motion is attached hereto.

Respectfully submitted,

_____/s/ Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____/s/ Rudolph Contreras_____
RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/ Rhonda C. Fields_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUAN BORDAS
     Plaintiff,

V.                                      Civil Action No. 08-00339 (JDB)

DEPARTMENT OF JUSTICE
d/b/a/ DRUG ENFORCEMENT ADMINISTRATION.

## STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

1.    By letter dated August 10, 2006, the plaintiff requested "full disclosure and release of all records and data . . . specifically under [his] name and/or an identifier assigned to [him]." The plaintiff identified "(1) arrest records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants and/or detainers, (5) final and closing investigation reports and, (6) any and all information, data or reports not otherwise exempt by statute. . . ."   Further, the plaintiff requested all documents in DEA's files pertaining to him and/or his criminal record.   Wassom Dec. at ¶ 6.

2.    By a second letter dated October 24, 2006, the plaintiff reiterated his request and, provided a criminal case number and the name of a court.  In both instances, the plaintiff claimed indigence.  However, the plaintiff agreed to pay any reasonable costs for search and copying of the material requested.  DEA interpreted his statement regarding "file IN FORMA PAUPERIS if I am indigent" as a request for a fee waiver.  *Id*. at ¶ 7.

3.    By letter dated October 31, 2006, DEA responded initially to the plaintiff informing him that his request was assigned DEA FOIA Request Number 06-1455-P.   The plaintiff was informed that DEA does not index its investigative records using criminal/court cases or docket numbers, however, the plaintiff could assist DEA's efforts by providing his date of arrest, date of

sentencing, a DEA investigative file number and/or the name of the DEA agent who conducted

the investigation.  With regard to the waiver of fees, DEA advised the plaintiff that his statement

of "file IN FORMA PAUPERIS if I am indigent" did not qualify for a waiver/reduction of fees.

DEA further stated the letter confirmed his obligation to pay all applicable fees up to $25.00, and

that for fee assessment purposes he had been categorized as an "all other" requester.  Finally,

DEA stated that no further action would be taken regarding the request until a response from him

was received.  *Id*. at ¶ 8.

4.    By letter dated June 13, 2007, DEA released portions of 17 pages to the plaintiff.  As

a result of the search conducted, 40 pages had been identified as responsive to his request.  Of the

40 pages, 23 pages were withheld in their entirety.  Information was withheld pursuant to FOIA

exemptions (b)(2), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2). *Id*. at ¶ 11.

5.    By a second letter dated June 13, 2007, DEA informed the plaintiff that the enclosed

documents represented all material available to him from files in which he was the named subject

of an investigation, or reports of investigation that resulted in his indictment and/or arrest.  DEA

further informed the plaintiff that his name was mentioned in other "related" files, and that if he

wished to have the files searched, it would be necessary for him to agree to pay an estimated

search fee of $168.00.  A signature line was provided on the form. *Id*. at ¶ 12.

6.    By letter dated April 29, 2008, DEA informed the plaintiff that a litigation review

had been conducted of DEA FOIA Request 07-0078-P, and that the previous fee letter sent to

him  covered only the search of six (6) headquarters files.  DEA further informed the plaintiff

that for each investigative case file number, a DEA Headquarters and a corresponding field file

exist, for a total of 12 investigative case files containing information responsive to his request,

that the approximate time to search each headquarters file is approximately two (2) hours, and

the approximate time to search a field file is approximately four (4) hours.  DEA stated that if the

plaintiff wished to have the remaining headquarters and field files searched, he would be

responsible for the search of four (4) headquarters files and six (6) field files at the rate of $28.00

per hour, for an estimated fee of $896.00 and, upon receipt of the search fee, it would initiate

further processing of the plaintiff's request.  *Id*. at ¶ 16.    DEA also informed the plaintiff that he

could reduce the search fee by electing to have only the headquarters or field files searched,

and/or specifying a period of time in which investigative case files were established or reports

created.  DEA further stated that, if no response was received in 45 days of the plaintiff's receipt

of the letter, it would be assumed that he did not wish a search of the additional files to be

conducted.  *Id*. at ¶ 17.

7.    By letter dated May 15, 2008, DEA again mailed its letter dated April 29, 2008, to

the plaintiff.  The April 29, 2008, letter had been addressed incorrectly and had been returned.

*Id*. at ¶ 18.  A copy of the signed return receipt reflects that the letter was received by the plaintiff

on May 22, 2008.  *Id*. at ¶ 19.

8.    The time for the plaintiff's response expired on July 7, 2008.  As of the date of this

declaration, DEA has received no response from the plaintiff.  *Id*. at ¶ 20.

9.    On  May 27, 2008,  plaintiff filed a motion requesting that the Court direct the

defendant to waive its Freedom of Information Act (FOIA) processing fee of $896.00.   Docket #

10.

10.    During a final litigation review, DEA determined that portions of page 19,

previously withheld in its entirety, and additional portions of page 21could be released to the

plaintiff.  By letter dated July 9, 2008, DEA released portions of two (2) pages to the plaintiff.

DEA continued to withhold information pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(F),

and PA exemption (j)(2).  A copy of the DEA letter dated July 9, 2008, is attached as Exhibit N.

*Wassom Dec* at ¶ 21.

Respectfully submitted,

_____/s/ Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

_____/s/ Rudolph Contreras_____
RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/ Rhonda C. Fields_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUAN BORDAS
     Plaintiff,

V.                                  Civil Action No. 08-00339 (JDB)

DEPARTMENT OF JUSTICE
d/b/a/ DRUG ENFORCEMENT ADMINISTRATION.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

Defendant respectfully submits the  memorandum of points and authorities in support of

defendant's motion to dismiss and for summary judgment.

**STATEMENT OF FACTS**

**Summary of Correspondence and Administrative Action**

By letter dated August 10, 2006, the plaintiff requested "full disclosure and release of all

records and data . . . specifically under [his] name and/or an identifier assigned to [him]."  The

plaintiff identified "(1) arrest records, (2) investigation and/or investigatory reports, (3) reports or

evidentiary and/or scientific information findings, (4) wants, warrants and/or detainers, (5) final

and closing investigation reports and, (6) any and all information, data or reports not otherwise

exempt by statute. . . ."  Further, the plaintiff requested all documents in DEA's files pertaining

to him and/or his criminal record.   Wassom Dec. at ¶ 6.

By a second letter dated October 24, 2006, the plaintiff reiterated his request and,

provided a criminal case number and the name of a court.  In both instances, the plaintiff claimed

indigence.  However, the plaintiff agreed to pay any reasonable costs for search and copying of

the material requested.  DEA interpreted his statement regarding "file IN FORMA PAUPERIS if

I am indigent" as a request for a fee waiver.  *Id*. at ¶ 7.

By letter dated October 31, 2006, DEA responded initially to the plaintiff informing him that his request was assigned DEA FOIA Request Number 06-1455-P.   The plaintiff was informed that DEA does not index its investigative records using criminal/court cases or docket numbers, however, the plaintiff could assist DEA's efforts by providing his date of arrest, date of sentencing, a DEA investigative file number and/or the name of the DEA agent who conducted the investigation.  With regard to the waiver of fees, DEA advised the plaintiff that his statement of "file IN FORMA PAUPERIS if I am indigent" did not qualify for a waiver/reduction of fees. DEA further stated the letter confirmed his obligation to pay all applicable fees up to $25.00, and that for fee assessment purposes he had been categorized as an "all other" requester.  Finally, DEA stated that no further action would be taken regarding the request until a response from him was received.  *Id*. at ¶ 8.

By letters dated November 14, 2006, the plaintiff  repeated his previous requests and provided the name of the Task Force Agent and DEA Special Agent who handled his DEA investigative cases.  The plaintiff also provided the date of his arrest and sentencing and additional criminal case numbers, and requested "the fees cost." *Id*. at ¶ 9.

By letter dated February 9, 2007, DEA acknowledged receipt of the plaintiff's November 16, 2006, letter.  Again the plaintiff was informed that DEA does not index its investigative records using a Court/Criminal Case and/or Docket Number.  DEA informed the plaintiff that under the FOIA, agencies are not required to search for records not under the control and custody of that agency..  *Id*. at ¶ 10.

By letter dated June 13, 2007, DEA released portions of 17 pages to the plaintiff.  As a result of the search conducted, 40 pages had been identified as responsive to his request.  Of the

40 pages, 23 pages were withheld in their entirety.  Information was withheld pursuant to FOIA

exemptions (b)(2), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2). *Id*. at ¶ 11.

By a second letter dated June 13, 2007, DEA informed the plaintiff that the enclosed

documents represented all material available to him from files in which he was the named subject

of an investigation, or reports of investigation that resulted in his indictment and/or arrest.  DEA

further informed the plaintiff that his name was mentioned in other "related" files, and that if he

wished to have the files searched, it would be necessary for him to agree to pay an estimated

search fee of $168.00.  A signature line was provided on the form. *Id*. at ¶ 12.

By undated letter addressed to DEA and apparently received by the Department of

Justice, Office of Information and Privacy (OIP) on August 9, 2007, the plaintiff appealed DEA's

assertion of FOIA exemptions (b)(7)(C) and (b)(7)(D).  Attached to the letter was a copy of the

second page of the DEA letter dated June 13, 2007, upon which the plaintiff provided his

signature agreeing to pay the estimated search fee of $168.00.   *Id*. at ¶ 13.

By letter dated August 14, 2007, OIP acknowledged the plaintiff's appeal and assigned it

appeal number 07-2162, informing the plaintiff that the appeal would be handled in copy of the

OIP letter dated August 14, 2007, is attached as Exhibit I.   *Id*. at ¶ 14.  By letter dated December

7, 2007, OIP affirmed DEA's action, stating that DEA properly withheld information pursuant to

FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  A copy of the OIP letter dated

December 7, 2007, is attached as Exhibit J.   A copy of the DEA letter dated December 7, 2007,

is attached as Exhibit J.  *Id*. at ¶  15.

By letter dated April 29, 2008, DEA informed the plaintiff that a litigation review had

been conducted of DEA FOIA Request 07-0078-P, and that the previous fee letter sent to him

covered only the search of six (6) headquarters files. DEA further informed the plaintiff that for each investigative case file number, a DEA Headquarters and a corresponding field file exist, for a total of 12 investigative case files containing information responsive to his request, that the approximate time to search each headquarters file is approximately two (2) hours, and the approximate time to search a field file is approximately four (4) hours. DEA stated that if the plaintiff wished to have the remaining headquarters and field files searched, he would be responsible for the search of four (4) headquarters files and six (6) field files at the rate of $28.00 per hour, for an estimated fee of $896.00 and, upon receipt of the search fee, it would initiate further processing of the plaintiff's request. *Id*. at ¶ 16. DEA also informed the plaintiff that he could reduce the search fee by electing to have only the headquarters or field files searched, and/or specifying a period of time in which investigative case files were established or reports created. DEA further stated that, if no response was received in 45 days of the plaintiff's receipt of the letter, it would be assumed that he did not wish a search of the additional files to be conducted. A copy of the DEA letter dated April 29, 2008, is attached as Exhibit K. *Id*. at ¶ 17. By letter dated May 15, 2008, DEA again mailed its letter dated April 29, 2008, to the plaintiff. The April 29, 2008, letter had been addressed incorrectly and had been returned. *Id*. at ¶ 18. A copy of the signed return receipt reflects that the letter was received by the plaintiff on May 22, 2008. *Id*. at ¶ 19. The time for the plaintiff's response expired on July 7, 2008. As of the date of this declaration, DEA has received no response from the plaintiff. *Id*. at ¶ 20.

On May 27, 2008, plaintiff filed a motion requesting that the Court direct the defendant to waive its Freedom of Information Act (FOIA) processing fee of $896.00. Docket # 10.

During a final litigation review, DEA determined that portions of page 19, previously

withheld in its entirety, and additional portions of page 21 could be released to the plaintiff.  By

letter dated July 9, 2008, DEA released portions of two (2) pages to the plaintiff.  DEA continued

to withhold information pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(F), and PA

exemption (j)(2).  A copy of the DEA letter dated July 9, 2008, is attached as Exhibit N.

*Wassom Dec* at ¶ 21.

## ARGUMENT

### I.  Standard of Review

#### A.  Motion to Dismiss

When reviewing a motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1), the Court "must accept as true all material allegations of the complaint, and must

construe the complaint in favor of the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501

(1975).  Where a motion to dismiss, however, presents a dispute over the factual basis for the

Court's jurisdiction, the Court "must go beyond the pleadings and resolve any disputed issues of

fact the resolution of which is necessary to a ruling upon the motion to dismiss."  *Phoenix*

*Consulting, Inc. v. Rep. of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).  "The plaintiff bears the

burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence."

*Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C.1998).

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court

must determine whether the plaintiff has alleged sufficient facts in its complaint to state a cause

of action.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Court must accept all well-pleaded

facts as true.  *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985).

"However, the court need not accept inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions

cast in the form of factual allegations."  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271,

1276 (D.C. Cir. 1994).

> To survive a motion to dismiss, a plaintiff need only include in his complaint "a
> short and plain statement of the claim showing that the pleader is entitled to relief.
> Specific facts are not necessary; the statement need only give the defendant fair
> notice of what the ... claim is and the grounds upon which it rests." *Erickson v.
> Pardus*, --- *U.S.* ----, 127 S.Ct. 2197, 2200,. . .(2007) (alteration in original)
> (internal quotation marks omitted). Moreover, "when ruling on a defendant's
> motion to dismiss, a judge must accept as true all of the factual allegations
> contained in the complaint." *Id.*; *see Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127
> S.Ct. 1955, 1974,. . .(2007) ("[W]e do not require heightened fact pleading of
> specifics, but only enough facts to state a claim to relief that is plausible on its
> face.").

*Muir v. Navy Federal Credit Union*, (D.C.,Cir. 2008)

### B.  Motion for  Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  *Id.* at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence

of evidence to support the non-moving party's case."  *Sweats Fashions, Inc. v. Pannill Knitting

Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, to avoid

summary judgment here, the Plaintiff (as the non-moving party) must present some objective

evidence that would enable the Court to find he is entitled to relief.  In *Celotex Corp. v. Catrett*,

the Supreme Court held that, in responding to a proper motion for summary judgment, the party

who bears the burden of proof on an issue at trial must "make a sufficient showing on an

essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).  In

*Anderson* the Supreme Court further explained that "the mere existence of a scintilla of evidence

in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the Plaintiff."  *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*,

813 F.2d 1236, 1242 (D.C. Cir.  1987) (the non-moving party is "required to provide evidence

that would permit a reasonable jury to find" in its favor).

In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

inexpensive determination of every action.'"  477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are

typically decided on motions for summary judgment.  *See Cappabianca v. Commissioner, U.S.

Customs Serv.*, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly

identified, FOIA cases should be handled on motions for summary judgment") (citing *Miscavige

v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary

judgment once it demonstrates that no material facts are in dispute and that each document that

falls within the class requested either has been produced, not withheld, is unidentifiable, or is

exempt from disclosure.  *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C.

Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the Plaintiff with affidavits or declarations and other evidence which show that the documents in question were produced or are exempt from disclosure. *Hayden v. NSA*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). *See also Public Citizen, Inc. v. Dept. of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

## II.    Adequate  Searches Were Conducted

In responding to a FOIA request, an agency must conduct a reasonable search for responsive records. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health, et al.*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983). This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce responsive information. *Id*. at 777 n.4. An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located. *Oglesby*, 920 F.2d at 68. Consistent with the reasonableness standard, the adequacy of  the search is "dependent upon the circumstances of the

case." *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. Dept. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent and reasonable. *Nation Magazine*, 71 F.3d at 892 n.7. Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. *Maynard v. CIA*, 986 F.2d 547, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68; *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." *Miller*, 779 F.2d at 1383; *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980). Although the agency has the burden of proof on the adequacy of its search, the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. Dept. of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) (quoting *SafeCard Servs.*, 926 F.2d at 1200). Thus, once the agency has met its burden regarding adequacy of its search, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller*, 779

9

F.2d at 1383.  A requester may not rebut agency affidavits with purely speculative allegations. *See Carney*, 19 F.3d at 813; *SafeCard*, 926 F.2d at 1200; *Maynard v. CIA*, 986 F.2d 547, 559-560 (1st Cir. 1993).

The plaintiff's letter requesting information about himself was interpreted as a request for criminal investigative records held by DEA that referenced or related to the plaintiff, or that referenced the plaintiff by name.  Wassom Dec. at ¶ 22.  Criminal investigative records about the plaintiff that are maintained by DEA are reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  IRFS is a DEA Privacy Act System of Records that contains all administrative, general, and criminal investigative files compiled by DEA for law enforcement purposes.  *Id.* at ¶ 23.  Other than IRFS, no other record system maintained by DEA was reasonably likely to maintain records responsive to the plaintiff's request.  *Id.* at ¶ 24.

The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS.  As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation.  Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.  *Id.* at ¶ 25.

On April 10, 2007, a NADDIS query was conducted by SARO in response to the plaintiff's request for information about himself.  The query was conducted by a SARO Freedom of Information Specialist, who used the plaintiff's name, Social Security Number, and date of birth.  *Id.* at ¶ 26.  As a result of the query, NADDIS identified six (6) criminal investigative case

files in which information regarding the plaintiff was located.  For each investigative case file

number a corresponding field file and information system file, for a total of 12 responsive files,

exists.  *Id.* at ¶ 27.   As a result of the SARO search that was conducted, 40 pages were identified

as responsive to the plaintiff's request.  Of the 40 pages, 23 pages were withheld in their entirety.

Information was withheld pursuant to FOIA exemptions (b)(2), (7)(C), (7)(D), (7)(F), and the

Privacy Act, 5 U.S.C. § 552a(j)(b)(2).  A *Vaughn* index detailing DEA's withholdings pursuant

to the asserted FOIA exemptions has been prepared, and it is attached as Exhibit O.  *Id.* at ¶ 28.

The search of the field files and headquarters systems that resulted in the identification

of the 40 pages consumed two (2) hours.  Pursuant to 28 C.F.R. § 16.11(d)(3), except for

requesters seeking records for a commercial use, components will provide without charge the

first 100 pages of duplication (or the cost equivalent) and the first two (2) hours of search (or the

cost equivalent).  The search time allowed the plaintiff without charge has been exceeded.

Therefore, the plaintiff is not entitled to any additional searches absent payment of the required

fees.  *Id.* at ¶ 29.

### I I I.  Plaintiff Has Failed to Exhaust Administrative Remedies as to the Additional Files Identified.

Pursuant to the FOIA, administrative remedies must be exhausted prior to seeking

judicial review.  *See Oglesby v. United States Dept. of the Army*, 920 F.2d 57, 61 (D.C. Cir.

1990).  Here, as demonstrated below, the undisputed facts establish that Plaintiff has not

exhausted his administrative remedies as to the additional four headquarters files and six field

files identified after the DEA's first submission to plaintiff.

Under pertinent regulations a FOIA requester must satisfy the prerequisites in order for

the Agency to process his or her request.  28 C.F.R. § 16.11(i)(4).  Specifically, DOJ regulations,

in accordance with the FOIA, provide that agency components "shall charge for processing requests under the FOIA" and "ordinarily shall collect all applicable fees before sending copies of requested records to a requester."  28 C.F.R. § 16.11(a).  When a requester has failed to pay an assessed fee, he has failed to comply with a necessary administrative requirement of the FOIA and has thereby failed to exhaust his administrative remedies.  As the Court held in *Trueblood v. United States Dept. of the Treasury*, 943 F. Supp. 64, 67 (D.D.C. 1996), a plaintiff must exhaust his administrative remedies by paying any applicable fees as "a condition precedent to judicial review of a FOIA suit."  *Accord Stebbins v. Nationwide Mutual Ins.*, 757 F.2d 364, 366 (D.C. Cir. 1985) (noting that "exhaustion of [administrative] remedies is required under the Freedom of Information Act before a party can seek judicial review."); *see also Center to Prevent Handgun Violence v. Department of the Treasury*, 981 F. Supp. 20, 23 (D.D.C. 1997) (finding that requester failed to exhaust administrative remedies by not paying assessed fee), *appeal dismissed*, No. 97-5357 (D.C. Cir. Feb. 26, 1997).

Moreover, a FOIA plaintiff is not relieved of his obligation to pay the assessed fee because he has subsequently filed a FOIA lawsuit.  *See Pollack v. Dept. of Justice*, 49 F.3d 115, 119-20 (4th Cir. 1995) (holding that commencement of a FOIA action does not relieve requester of obligation to pay fees).  Indeed, exhaustion of administrative remedies does not occur until the outstanding fees are paid.  *See Trueblood*, 943 F. Supp. at 67; *see also Oglesby*, 920 F.2d at 66 (holding that exhaustion of administrative remedies occurs when "the required fees are paid or an appeal is taken from the refusal to pay fees").

A FOIA lawsuit "is subject to dismissal for lack of subject matter jurisdiction if [the plaintiff] fails to exhaust all administrative remedies."  *Trueblood*, 943 F. Supp. at 67; *see also*

12

*Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986); *Center to Prevent Handgun Violence*, 981 F. Supp. at 23; *Crooker v. United States Secret Serv.*, 577 F. Supp. 1218, 1219 (D.D.C. 1983).  Indeed, "strict enforcement of the exhaustion doctrine is favored in FOIA cases."  *Center to Prevent Handgun Violence*, 981 F. Supp. at 23.  *See also Jeanes v. U.S. Dept. of Justice*, 357 F. Supp. 2d 119, 122-23 (D.D.C. 2004)(Court lacks subject matter jurisdiction because there is no evidence in the record that assessed fees paid).  The same conclusion applies to the instant action, where Plaintiff has failed to pay the requisite fees for search of additional documents.

By letter dated April 29, 2008, DEA informed the plaintiff that it had identified additional headquarters and field files which might contain information responsive to his request. Wassom Dec. at Exhibit K.  DEA estimated that the fee for searching the additional files would be approximately $896.00.  *Id.* at p. 2.  The first search conducted had exhausted the fee limitation imposed by 28 C.F.R.§16.11(d)(3) which provides for no charge for the first 100 pages of duplication and the first two hours of search.  Wassom Dec. Exhibit K  at p. 1-2.   Since plaintiff had no  record of a history of payment by plaintiff, DEA required payment in advance pursuant to 28 C.F.R. § 16.11 (i)(2).   Wassom Dec. Exhibit K  at p. 3.  Plaintiff has not paid the requested fee.   Wassom Dec. at ¶ 20.  Instead he has asked the Court to direct the DEA to waive the fee due his indigency.   Docket # 10.

However, as is set forth in defendant's opposition to plaintiff's motion for fee waiver, *see* docket # 11, plaintiff fails to meet the statutory and regulatory requirements for fee waiver found in 5 U.S.C.A. § 552 (4)(A)(iii) and 28 C.F.R. § 16.11(k).  "[I]ndigence is not a justification for waiving fees."  *Decato v. Executive Office for U.S. Attorneys*,  2003 WL 22433759, 1 (D.C.

13

Cir. 2003) (*citing Ely v. United States Postal Service*, 753 F.2d 163, 165 (D.C.Cir.), cert. denied, 471 U.S. 1106 (1985)); *accord Kumar v. U.S. Dept. of Justice*, 2007 WL 537723, 3 (D.D.C.2007).

Therefore plaintiff has failed to exhaust his administrative remedies because he has not paid the fees required for a search of the additional files.

Clearly, the diligent searches recently conducted here were reasonable. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995); *Miller v. Dept. of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) ("'the search need only be reasonable; it does not have to be exhaustive.'") (citing *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

**Application of Exemptions**

The search at issue identified 40 pages of responsive information consisting of:

(a). 10 DEA ROIs;

(b). six (6) DEA Personal History Reports;

(c). one (1) DEA Defendant Disposition Report;

(d). five (5) DEA Acquisition of Non-Drug Property and Regulatory Seizures; and,

(e). one (1) page containing the plaintiff's mug shots and identifying information

Wassom Dec at ¶ 43. For a detailed generic description of what appears on such documents see Wassom Dec. at ¶ 30-42.

**Privacy Act Exemption (j)(2)**

Section (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ." 5 U.S.C. § 552a(j)(2).

DEA is a component of the Department of Justice whose primary responsibility is the enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq*. See 28 C.F.R. § 0.100. Wassom Dec. at ¶45. The DEA Investigative Reporting and Filing System (IRFS) is a Privacy Act System of Records that was last reported at 77 Fed. Reg. 3410 and last published in its entirety at 61 Fed. Reg. 54219. In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(b)(2), to exempt records contained in IRFS from access. *See* 28 C.F.R. §16.98(c)(3). *Id*. at ¶ 46. In accordance with the Privacy Act, 5 U.S.C. §552a, except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information relating to a third-party was released, unless required by the FOIA or pursuant to a routine use. No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third-party information. Therefore, all third-party information was withheld where release was not required by the FOIA. *Id*. at ¶ 47.

**FOIA Exemption (b)(2)**

Exemption 2 under FOIA exempts from mandatory disclosure records that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Not long

after FOIA was passed, the Supreme Court declared that Exemption 2 was intended to relieve agencies of the burden of assembling and providing access to any "matter in which the public could not reasonably be expected to have an interest" and matters of public interest "where disclosure may risk circumvention of agency regulation." *Dept. of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976). Subsequently, courts have approved two general categories of withholdings under Exemption 2: (1) internal matters of a relatively trivial nature (sometimes referred to as "low-2"); and (2) more substantial internal matters for which disclosure would risk circumvention of a legal requirement (sometimes called "high-2"). *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992); *see Crooker v. ATF*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc) (setting forth a two part test for high-2 material). In short, this exemption protects routine internal administrative matters and functions of the DEA which have no effect on the public at large.

Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, many of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, and NADDIS numbers. The G-DEP and NADDIS numbers are part of DEA's internal system of identifying information and individuals. Wassom Dec. at ¶ 49.

G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity. *Id*

NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest. Each number is unique and is assigned to only one violator within the DEA NADDIS indices. Thus, Exemptions

(7)(C) and (7)(F) were used in conjunction with (b)(2) to withhold third- party NADDIS numbers. *Id.*

The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings. Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension and create alibis for suspected activities. Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts. All G-DEP codes found in the responsive pages are withheld. *Id*

NADDIS numbers are unique and personal to the individual to whom the number applies. They are assigned by DEA for internal use and there is no public interest in the release of these codes. *Id.* at ¶ 50.

## FOIA Exemption 6

Exemption 6 of the FOIA protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), *quoting Dept. of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). The Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control of information concerning his or her person." *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763 (1989).

17

In order to determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted), citing *United States Dept. of Defense v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), *quoting Dept. of Air Force v. Rose*, 425 U.S. 352, 372 (1976). In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he *only* relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 46 (editing by the court, emphasis supplied, interior quotation marks omitted), quoting *United States Dept. of Defense v. FLRA*, 510 U.S. 487, 497 (1994). *See also Reporters Committee*, 489 U.S. at 773. Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775. Further, "something, even a modest privacy interest, outweighs nothing every time." *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989); *but see Lepelletier*, 164 F.3d at 48 (in extraordinary circumstance where the individuals whose privacy the government seeks to protect have a "clear interest" in release of the requested information, the balancing under Exemption 6 must include consideration of that interest). Exemption 6 is applicable in each instance in which exemption 7 was invoked by the DEA as is described below.

**Records or Information Compiled for Law Enforcement Purposes**

**FOIA Exemption (7) Threshold**

DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq*. (hereinafter, the Act) which authorizes DEA to enforce the Act through, for example,  the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control. Wassom Dec. at ¶51.  The records deemed responsive to the plaintiff's FOIA request are criminal investigative records.  The records were compiled during criminal law enforcement investigations of the plaintiff and several third-parties.  *Id*. at ¶ 52. .

**FOIA Exemption (7)(C)**

Exemption 7(C) authorizes the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) " show the information is likely to advance that interest."  *Boyd v. Criminal Division of U.S. Dept. of Justice,* 475 F.3d 381, 366, (D.C. Cir. 2007), *citing Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172, (2004).  If the public interest is government wrongdoing, then the requester must "produce evidence that would

19

warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish* at 174.

The DEA satisfies the standard for invoking Exemption 7 of the FOIA because of its law enforcement mission and responsibilities for enforcement of criminal statutes. *Rugiero v. United States Dept. of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (explaining that the "Court has adopted a per se rule" that applies not only to criminal enforcement actions, but to "records compiled for civil enforcement purposes as well."). Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court affirmed the broad scope of Exemption 7(C) in *National Archives and Records Admin. v. Favish*, 541 U.S. 157 (2004). When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987), citing *Pratt*, 673 F.2d at 418. A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" *Keys*, 830 F.2d at 340, quoting *Pratt*, 673 F.2d at 421. Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. *See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 776-80 (1989). Only where the requester can

20

produce meaningful evidence – "more than a bare suspicion" – which would cause a reasonable person to believe that the government had engaged in impropriety should the Court even consider balancing the privacy interests against the public interest in disclosure. *Favish*, 124 S. Ct. at 1581. Plaintiff here has not alleged any such impropriety.

Many of the documents processed in response to plaintiff's FOIA request contain names and other identifying information which would reveal the identity of and disclose personal information about third-parties who were involved or associated with the plaintiff or with a law enforcement investigation. These individuals are protected from the disclosure of their identities and information about them. These individuals include third-parties, suspects, co-defendants, and confidential sources of information. Wassom Dec. at ¶53.

In making the determination to release or withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy. *Id*. at ¶ 54.

In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations.

In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (7)C), and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy.  *Id.* at ¶ 55.

The identities of DEA Special Agents, an Internal Revenue Service Special Agent, an Organized Crime Drug Enforcement Task Forces (OCDETF) Special Agent, and state/local law enforcement officers were withheld.  Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigation.  *Id.* at ¶ 56.

The Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals.  They were, and possibly still are, in positions of access to information regarding official law enforcement investigations.  If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations.  There is no public interest to be served by releasing the identities of these individuals. *Id.* at ¶ 57.

Government employees were assigned to handle tasks relating to the official investigations into the criminal activities of the plaintiff.  They were, and possibly still are, in positions of access to information regarding official law enforcement investigations.  If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations.  Also, release of their identities

22

would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees. *Id*. at ¶ 58.

The law is well settled that all of these individuals, ranging from law enforcement agents and support staff, to third parties and victims, have substantial, protectable privacy interests in their anonymity. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893, 895-96 (D.C. Cir. 1995); *Computer Professionals for Social Responsibility*, 72 F.3d at 904; *Farese v. U.S. Dept. of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987); *Lesar v. U.S. Dept. of Justice*, 636 F.2d 472, 487-88 (D.C. Cir. 1980).

**Confidential Sources and Information Obtained from Confidential Sources** : **FOIA Exemption (7)(D) and (7)(C)**

_____Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D). Exemption 7(D)'s "paramount objective" "is to keep open the Government's channels of confidential information." *Birch v. United States Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).[1]

_____

[1] The term "confidential source" is broadly construed. *See, e.g., Gula v. Meese*, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); *Putnam v. United States Dept. of Justice*, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel). Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others. *Dow Jones & Co. v. Dept. of Justice*, 917 F.2d 571, 575-76 (D.C. Cir.

When invoking Exemption 7(D), the agency must demonstrate that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or an implied promise of confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to disclose the source's identity. *United States Dept. of Justice v. Landano*, 508 U.S. 165, 171-72 (1993). If an individual has not been given an *express* promise of confidentiality, the agency may demonstrate that a source has been given an *implied* promise of confidentiality based upon the circumstances of the case. *Landano*, 508 U.S. at 179-80. The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred." *Id*. at 179. However, once an agency establishes an express or implied promise of confidentiality, it is extremely difficult to overcome. In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'" *Parker*, 934 F.2d at 378, quoting *Dow Jones & Co. v. Dept. of Justice*, 908 F.2d 1006, 1011 (D.C. Cir.), *reh'g denied en banc*, 917 F.2d 571 (D.C. Cir. 1990).

The Court in *Landano* stressed two factors to be considered in determining whether an implied promise of confidentiality exists: "the nature of the crime investigated and the witness' relation to it." *Id*. at 181. In applying these factors, a key consideration is the potential for retaliation against the source. *Id*. at 179-80; *see also, Williams v. FBI*, 69 F.3d 1155, 1159 (D.C.

---

1990). As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." *United States Dept. of Justice v. Landano*, 508 U.S. 165, 172 (1993).

Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); *Hale v. Dept. of Justice*, 99 F.3d 1025, 1031 (10th Cir. 1996).  *See also Garcia v. U.S. Dept. of Justice, Office of Information and Privacy,*  181 F.Supp.2d 356, 375 -376 (S.D.N.Y.2002)and cases cited therein.

Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well.  The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity.  *Pollard v. FBI*, 705 F.2d 1151, 1155 (9th Cir. 1983); *see also Stone v. Defense Investigative Serv.*, 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); *Doe v. U.S. Dept. of Justice*, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity").  The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, and unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests.  *Parker v. Dept. of Justice*, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); *Jones v. FBI*, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure").  Therefore, "once the agency receives information from a '"confidential source" during the course of a legitimate criminal investigation . . . all such information obtained

25

from the confidential source receives protection.'" *Parker*, 934 F.2d at 380 (editing by the court, *quoting Lesar v. United States Dept. of Justice*, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)). Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, *Ortiz v. HHS*, 70 F.3d 729, 733 (2d Cir. 1995), *cert. denied*, 517 U.S. 1136 (1996), and after the death of the source. *Campbell v. Dept. of Justice*, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

Exemption (7)(D) was employed to withhold certain reports in part, and others in their entirety, that contained information that would disclose the identity of and the information provided by a confidential source. *Wassom Dec.* at ¶ 59. Confidential sources of information include those about whom, based upon the facts and circumstances, confidentiality can be implied. Each document or group of related pages that contain material provided by individual(s), other than a DEA agent, was examined in light of exemption (7)(D) to determine whether confidentiality was express or implied. *Id*. at ¶ 60.

**Sources with Implied Confidentiality**

When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime. *Id*. at ¶ 61.

Pages "24" and "25" comprise an unsigned three-page ROI that memorializes an interview of a named confidential source, who provided information about his/her drug trafficking interaction with the plaintiff and third-parties. *Id.* at ¶ 76.

Page "26" is the first page of a three-page ROI describing the acquisition of non-drug exhibits. Paragraphs 1 and 2 contain the identity of and information regarding a named confidential source and a third-party. *Id*. at ¶ 62.

Page "27" is the second page of a three-page ROI describing the acquisition of non-drug exhibits. The page contains information about the receipt of non-drug exhibits with the assistance of a named confidential source and information related to third-parties. *Id*. at ¶ 77.

Pages "31" through "33" comprise a three-page ROI memorializing the interviews of three (3) named confidential sources, who provided information about the drug trafficking activities of themselves, the plaintiff, and third-parties. *Id*. at 78.

Pages "34" through "36" comprise a three-page ROI containing information regarding the identification of individuals by two (2) named confidential sources. *Id*. at ¶ 79.

Pages "37" through "39" comprise a three page ROI that memorializes the interviews of two named confidential sources, who provided information about the drug trafficking activities of themselves, the plaintiff, and third-parties. *Id.* at ¶ 80.

Page "70" is the first page of a two-page ROI containing the Case Initiation Report of the plaintiff's DEA investigation. The page contains information from a confidential source, who provided information about the drug trafficking activities of third-parties. *Id*. at ¶ 63.

The DEA found implied confidentiality for these individuals for the following reasons:

The plaintiff was arrested for conspiracy to distribute cocaine, and convicted of conspiracy to distribute and the delivery of marijuana. It is reasonable to infer that the individuals who provided information about the plaintiff would fear for their safety, since violence is inherent in the trade in illicit substances such as cocaine and marijuana, if their identities or the information

27

they provided was revealed.  Additionally, release of the name of the sources could jeopardize DEA operations, since their cooperation and that of other similarly situated individuals could be needed in future criminal investigations.  *Id.* at ¶ 64.

In addition to exemption (7)(D), privacy  exemptions 6 and  (7)(C) also are clearly applicable to identifying information pertaining to these individuals.  See Wassom Dec. at ¶ 53. Case law has long recognized that the mere disclosure of an individual's identity in a law enforcement file "will engender comment and speculation and carries a stigmatizing connotation." *See Fitzgibbon v. C.I.A.*,  911 F.2d 755, 767 (D.C.Cir.1990)("[e]xemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.' ") (citing *Dunkelberger v. Department of Justice*, 906 F.2d 779, 781 (D.C.Cir.1990) (*quoting Stern v. FBI*, 737 F.2d 84, 91-92 (D.C.Cir.1984));   *Martin v. Department of Justice*,  488 F.3d 446, 457,  (D.C.Cir. 2007)("[T]hird parties who may be mentioned in investigatory files" and "witnesses and informants who provide information during the course of an investigation" have an "obvious" and "substantial" privacy interest in their information.")(*citing Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C.Cir.1995).

**FOIA Exemption (7)(F)**

The FOIA, 5 U.S.C. § 552(b)(7)(F), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which "could reasonably be expected to endanger the life or physical safety" of an individual.  *Id.* at ¶65.

The names of DEA Special Agents, Supervisory Special Agents, other Federal special agents, task force officers, state/local law enforcement officers, suspects, third-parties and

28

confidential sources were withheld pursuant to Exemption (b)(7)(F).  This information was also

withheld pursuant to Exemption (b)(7)(C) and (b)(7)(D). *Id*. at ¶ 66.   DEA Special Agents and

Supervisory Special Agents, as well as other law enforcement officers, are frequently called upon

to conduct a wide variety of investigations, including sensitive and dangerous undercover

operations.  Special agents, task force and other law enforcement officers, and confidential

sources routinely approach and associate with violators in a covert capacity.  Many of those

violators are armed and many have known violent tendencies.  *Id*. at ¶ 67.

It has been the experience of DEA that violence is inherent in the drug trade and the

release of the identities of law enforcement officers, third parties and confidential sources has, in

the past, resulted in several instances of physical attacks, threats, harassment, murder and

attempted murder.  The names were withheld since it was reasonable to conclude that identifying

them could subject them to harassment, reprisal and/or physical retaliation for providing

information or being connected with the investigation in any way.  *Id*. at ¶ 68.

In addition, if the names of Special Agents and other law enforcement officers were

released pursuant to the FOIA, DEA would be releasing this data into the public realm.  DEA

considers it to be within the public interest not to disclose the identity of special agents so that

they may effectively pursue their undercover and investigatory assignments.  These assignments

are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of

narcotic and dangerous drugs.  Public disclosure of the identities of investigatory personnel would

have a detrimental effect on the successful operation of DEA,  as well as risk harassment and

danger to its agents and other law enforcement personnel. *Id*. at ¶ 69.   *See Blanton v. U.S. Dept.

of Justice*,  182 F.Supp.2d 81, 86 -87 (D.D.C. 2002)("This exemption has been interpreted to

afford 'broad protection to the identities of individuals mentioned in law enforcement files.'

*Jimenez v. FBI*, 938 F.Supp. 21, 30-31 (D.D.C.1996). The same information that is withheld

under Exemption 7(C) may be withheld under Exemption 7(F) to protect against risk of physical

injury or harassment. *See Epps v. Department of Justice*, 801 F.Supp. 787, 795 (D.D.C.1992); *see*

*also Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977).").

**All Reasonably Segregable Material Has Been Released to Plaintiff.**

The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dept. of the Air Force*, 566 F.2d 242,

260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a

District Court considering a FOIA action has "an affirmative duty to consider the segregability

issue *sua sponte*." *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d

1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements." *Mead Data*,

566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed. *Id*. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

*Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover,

the agency is not required to "commit significant time and resources to the separation of disjointed

words, phrases, or even sentences which taken separately or together have minimal or no

information content." *Mead Data*, 566 F.2d at 261, n.55.    A review of Ms.  Wassom's

declaration reveals that the DEA carefully reviewed the information and confirms that all

reasonably segregable non-exempt material has been released.

    All of the responsive information was examined to determine whether any reasonably

segregable information could be released.  Wassom Dec.  at ¶70.    Pages were withheld in their

entirety where, based upon the review, the release of any additional information would (1) result

in the disclosure of no useful information, or incomprehensible words and/or phrases that would

not shed any light on how the Government conducts business, (2) could result in compromising

the identity of and  information provided by sources of information who were granted express

confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would

be an unwarranted invasion of personal privacy when balanced against the public interest in the

release of information gathered during the course of a criminal investigation, and/or (4) place in

jeopardy the lives and safety of third-parties which includes sources of information, individuals

associated with or mentioned in the investigative reports, and DEA agents and other law

enforcement personnel. *Id*. at ¶ 70.

    DEA also took into consideration the time and effort that would be expended to exclude or

include information in a record or document being processed.  The current redaction process

employed by DEA entails the use of translucent red cellophane tape.  After the tape is applied, the

document is copied and the information intended to be withheld is blackened in the copying

process. *Id*. at ¶ 71.   Once tape is applied, it generally cannot be removed.  The tape lifts the print

from the paper, if removal is attempted or if it inadvertently touches print not intended to be

withheld.  The page must then be recopied and the process begun again.  The process of applying

a thin strip of tape is tedious, cumbersome and time consuming; however, it is the most effective and efficient means currently available to DEA to withhold information based upon the manner and methods in which DEA records information and maintains its records. Consequently, the importance of releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page. *Id*. at ¶72.   In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business.  Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.  *Id*. at ¶  73.

Pages "4" and "5" comprise a two page ROI regarding one of the plaintiff's DEA drug investigations.  The report was generated to correct misreported information related to third-parties.  No information regarding the plaintiff is contained in the report.  The plaintiff's name and NADDIS number appear in the indexing section only.  Once information regarding the third-parties and the internal designations are withheld, only incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain.  Thus, the pages are withheld in their  entirety pursuant to FOIA exemptions (b)(2), (7)(C), and (7)(F).  *Id*. at ¶ 74.

Pages "11" through "12", "13" through "14",  "15" through "16", and  "17" through "18" comprise four (4)  DEA Personal History Reports, DEA Form 202s, related to four (4) separate third-parties.  The reports contain identifying information related to the third-parties, information about the third-parties, their family members and associates, and information regarding their

arrests.  The plaintiff's name and NADDIS number are included on the first pages of the reports as a criminal associate in Block 43a.  After redacting all the withholdable information, only the plaintiff's name and NADDIS number, and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain.  Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C), (7)(D) and (7)(F).  *Id*. at ¶ 75.

Pages "24" and "25" comprise an unsigned three-page ROI that memorializes an interview of a named confidential source, who provided information about the his/her drug trafficking interaction with the plaintiff and third-parties.  Information about the plaintiff is found in two paragraphs on page "24".  The information about the plaintiff is inextricably intertwined with information about  third-parties and the disclosure  of any information could enable the plaintiff to identify the confidential source and the third-parties.  After redacting all the withholdable information, only the plaintiff's name and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain.  Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C), (7)(D), and (7)(F).   *Id*. at ¶ 76.

Page "27" is the second page of a three-page ROI describing the acquisition of non-drug exhibits.  The page contains information about the receipt of non-drug exhibits with the assistance of a named confidential source and information related to third-parties.  Neither the plaintiff's name nor information about the plaintiff is contained on the page.  After redacting all the withholdable information, only the plaintiff's name and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain.  Thus, the

page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (7)(C), (b)(7)(D), and (7)(F). *Id*. at ¶ 77

Pages "31" through "33" comprise a three-page ROI memorializing the interviews of three (3) named confidential sources, who provided information about the drug trafficking activities of themselves, the plaintiff, and third-parties. Information about the plaintiff is found in one sentence on page "32", and in the Indexing Section on page "33". The information about the plaintiff is inextricably intertwined with information about two of the confidential sources and third-parties. Release of any information could enable the plaintiff to identify the confidential sources and third-parties. After redacting all the withholdable information, only the plaintiff's name and NADDIS number, and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the report was withheld in its entirety pursuant to FOIA exemptions (b)(2), (7)(C), (7)(D), and (7)(F). *Id*. at ¶ 78.

Pages "34" through "36" comprise a three-page ROI containing information regarding the identification of individuals by two (2) named confidential sources. Information about the plaintiff is found in the second paragraph of the report and his name and NADDIS number are contained in the Indexing Section. The information about the plaintiff is inextricably intertwined with information about the confidential sources and third-parties. Release of any information could enable the plaintiff to identify the confidential sources. After redacting all the withholdable information, only the plaintiff's name and NADDIS number, and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C) and (7)(F). *Id*. at ¶ 79.

Pages "37" through "39" comprise a three page ROI that memorializes the interviews of two named confidential sources, who provided information about the drug trafficking activities of themselves, the plaintiff, and third-parties.  Information about the plaintiff is found in two paragraphs on page "37", and his name is mentioned in the Indexing Section on page "39".  The information about the plaintiff is inextricably intertwined with information about the confidential sources and third-parties.  Release of any information could enable the plaintiff to identify the confidential source and third-parties.  After redacting all the withholdable information, only the plaintiff's name and NADDIS number, and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain.  Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C), (b)(7)(D),  and (7)(F).  *Id.* at ¶ 80.

Thus, all reasonably segregable material has been released to plaintiff.

## **CONCLUSION**

For all the foregoing reasons, the Agency's Motion to Dismiss and for Summary Judgment

should be granted and Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

_____/s/ Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/ Rudolph Contreras_____
RUDOLPH  CONTRERAS, D.C. Bar #434122
Assistant United States Attorney


_____/s/ Rhonda C. Fields_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970 *Of Counsel:*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of July, 2008, I caused the foregoing *Motion to Dismiss and for Summary Judgment and all attachments,* to be served on *pro se* Plaintiff, postage prepaid, addressed as follows:

JUAN BORDAS
R 50700-004
MIAMI
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 779800
MIAMI, FL 33177
PRO SE

_____

_____/s/_____
Rhonda C. Fields
Assistant United States Attorney
555 4th Street, NW
Civil Division
Washington, D.C.  20530
(202) 305-4851
(202) 514-8780 (facsimile)

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

Juan Bordas                          )
                                         )
              Plaintiff,           )
                                         )
          v.                       )
                                       ) Civil Action No. 08-0339 JDB
Drug Enforcement Administration,     )
                                       )
                                       )
            Defendant.        )
_____)

### DECLARATION OF LEILA I. WASSOM

1.  I am a Drug Enforcement Administration (DEA) Paralegal Specialist, currently assigned to the Office of Chief Counsel, Administrative Law Section (CCA), DEA Headquarters, Washington, D.C. From August 1991 to June 2005, I was assigned to the Freedom of Information and Records Management Section, DEA Headquarters.

2.  I review, for litigation purposes, both the initially processed and appealed Freedom of Information Act (FOIA) and Privacy Act (PA) requests received by DEA. I have performed these duties at DEA since 1991.

3.  My duties require that I am familiar with the policies and practices of DEA regarding the processing and release of information requested under the FOIA/PA, and the application of the FOIA/PA and exemptions for which I have received formal and on the job training.

4. In preparing this declaration, I have read and am familiar with the complaint, in the above entitled action, and the records maintained by the DEA Freedom of Information Operations Unit (SARO).

5. SARO is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA. I am familiar with the policies, practices and procedures employed by SARO that relate to the search for, and the processing and release of information responsive to FOI/PA requests received by the DEA.

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

6. By letter dated August 10, 2006, the plaintiff requested "full disclosure and release of all records and data . . . specifically under [his] name and/or an identifier assigned to [him]." The plaintiff identified "(1) arrest records, (2) investigation and/or investigatory reports, (3) reports or evidentiary and/or scientific information findings, (4) wants, warrants and/or detainers, (5) final and closing investigation reports and, (6) any and all information, data or reports not otherwise exempt by statute. . . ." Further, the plaintiff requested all documents in DEA's files pertaining to him and/or his criminal record. A copy of the plaintiff's letter dated August 10, 2006, is attached as Exhibit A.

7. By a second letter dated October 24, 2006, the plaintiff reiterated his request and, provided a criminal case number and the name of a court. In both instances, the plaintiff claimed indigence. However, the plaintiff agreed to pay any reasonable costs for search and copying of the material

-2-

requested. DEA interpreted his statement regarding "file IN FORMA PAUPERIS if I am

indigent" as a request for a fee waiver. A copy of the plaintiff's letter dated October 24, 2006, is

attached as Exhibit B.

8. By letter dated October 31, 2006, DEA responded initially to the plaintiff informing him that

his request was assigned DEA FOIA Request Number 06-1455-P. DEA apologized for the

amount of time taken to review the plaintiff's initial request letter, stating that the FOIA office

was backlogged. The plaintiff was also informed that DEA does not index its investigative

records using criminal/court cases or docket numbers, however, the plaintiff could assist DEA's

efforts by providing his date of arrest, date of sentencing, a DEA investigative file number

and/or the name of the DEA agent who conducted the investigation. With regard to the waiver

of fees, DEA advised the plaintiff that his statement of "file IN FORMA PAUPERIS if I am

indigent" did not qualify for a waiver/reduction of fees. DEA further stated the letter confirmed

his obligation to pay all applicable fees up to $25.00, and that for fee assessment purposes he had

been categorized as an "all other" requester. Finally, DEA stated that no further action would be

taken regarding the request until a response from him was received. A copy of the DEA letter

dated October 31, 2006, is attached as Exhibit C.

9. By letters dated November 14, 2006, the plaintiff repeated his previous requests and

provided the name of the Task Force Agent and DEA Special Agent who handled his DEA

investigative cases. The plaintiff also provided the date of his arrest and sentencing and

additional criminal case numbers, and requested "the fees cost." Copies of the plaintiff's letters

dated November 14, 2006, are attached as Exhibit D.

-3-

10. By letter dated February 9, 2007, DEA acknowledged receipt of the plaintiff's November

16, 2006, letter. Again the plaintiff was informed that DEA does not index its investigative

records using a Court/Criminal Case and/or Docket Number. DEA informed the plaintiff that

under the FOIA, agencies are not required to search for records not under the control and

custody of that agency. A copy of the DEA letter dated February 9, 2007, is attached as

Exhibit E.

11. By letter dated June 13, 2007, DEA released portions of 17 pages to the plaintiff. As a result

of the search conducted, 40 pages were identified as responsive to his request. Of the 40 pages,

23 pages were withheld in their entirety. Information was withheld pursuant to FOIA

exemptions (b)(2), (b)(7)(D), and (b)(7)(F), and Privacy Act exemption (j)(2). A copy of the

DEA letter dated June 13, 2007, is attached as Exhibit F.

12. By a second letter dated June 13, 2007, DEA informed the plaintiff that the enclosed

documents represented all material available to him from files in which he was the named

subject of an investigation, or reports of investigation that resulted in his indictment and/or

arrest. DEA further informed the plaintiff that his name was mentioned in other "related" files,

and that if he wished to have the files searched, it would be necessary for him to agree to pay an

estimated search fee of $168.00. A signature line was provided on the form. A copy of the

second DEA letter dated June 13, 2007, is attached as Exhibit G.

13. By undated letter addressed to DEA and apparently received by the Department of Justice,

Office of Information and Privacy (OIP) on August 9, 2007, the plaintiff appealed DEA's

-4-

assertion of FOIA exemptions (b)(7)(C) and (b)(7)(D).  Attached to the letter was a copy of the second page of the DEA letter dated June 13, 2007, upon which the plaintiff provided his signature agreeing to pay the estimated search fee of $168.00.  A copy of the plaintiff's undated letter is attached as Exhibit H.

14.  By letter dated August 14, 2007, OIP acknowledged the plaintiff's appeal and assigned it appeal number 07-2162, informing the plaintiff that the appeal would be handled in approximate order of receipt.  A copy of the OIP letter dated August 14, 2007, is attached as Exhibit I.

15.  By letter dated December 7, 2007, OIP affirmed DEA's action, stating that DEA properly withheld information pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  A copy of the OIP letter dated December 7, 2007, is attached as Exhibit J.  A copy of the DEA letter dated December 7, 2007, is attached as Exhibit J.

16.  By letter dated April 29, 2008, DEA informed the plaintiff that a litigation review had been conducted of DEA FOIA Request 07-0078-P, and that the previous fee letter sent to him by SARO covered only the search of six (6) headquarters files.  DEA further informed the plaintiff that for each investigative case file number, a DEA Headquarters and a corresponding field file exist, for a total of 12 investigative case files containing information responsive to his request, that the approximate time to search each headquarters file is approximately two (2) hours, and the approximate time to search a field file is approximately four (4) hours.  DEA stated that if the plaintiff wished to have the remaining headquarters and field files searched, he would be

responsible for the search of four (4) headquarters files and six (6) field files at the rate of $28.00 per hour, for an estimated fee of $896.00 and, upon receipt of the search fee, it would initiate further processing of the plaintiff's request.

17. DEA also informed the plaintiff that he could reduce the search fee by electing to have only the headquarters or field files searched, and/or specifying a period of time in which investigative case files were established or reports created. DEA further stated that, if no response was received in 45 days of the plaintiff's receipt of the letter, it would be assumed that he did not wish a search of the additional files to be conducted. A copy of the DEA letter dated April 29, 2008, is attached as Exhibit K.

18. By letter dated May 15, 2008, DEA again mailed its letter dated April 29, 2008, to the plaintiff. The April 29, 2008, letter was addressed incorrectly and returned. A copy of the DEA letter dated May 15, 2008, is attached as Exhibit L.

19. The letter was received by the plaintiff on May 22, 2008. A copy of the signed return receipt dated May 22, 2008, is attached as Exhibit M.

20. The time for the plaintiff's response expired on July 7, 2008. As of the date of this declaration, DEA has received no response from the plaintiff.

21. During a final litigation review, it has been determined that portions of page 19, previously withheld in its entirety, and additional portions of page 21could be released to the plaintiff. By

-6-

letter dated July 9, 2008, DEA released portions of two (2) pages to the plaintiff. DEA

continued to withhold information pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(F), and PA

exemption (j)(2). A copy of the DEA letter dated July 9, 2008, is attached as Exhibit N.

## ADEQUACY OF SEARCH

22. The plaintiff's letter requesting information about himself was interpreted as a request for

criminal investigative records held by DEA that referenced or related to the plaintiff, or that

referenced the plaintiff by name.

23. Criminal investigative records about the plaintiff that are maintained by DEA are reasonably

likely to be found in the DEA Investigative Reporting and Filing System (IRFS),

JUSTICE/DEA-008. IRFS is a DEA Privacy Act System of Records that contains all

administrative, general, and criminal investigative files compiled by DEA for law enforcement

purposes.

24. Other than IRFS, no other record system maintained by DEA was reasonably likely to

maintain records responsive to the plaintiff's request.

25. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to

and the practical means by which DEA retrieves investigative reports and information from

IRFS. As an index, NADDIS points to investigative files and particular DEA Reports of

Investigation (ROI), DEA Form-6 or other documents by date, that contain information

regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

26. On April 10, 2007, a NADDIS query was conducted by SARO in response to the plaintiff's request for information about himself. The query was conducted by an SARO Freedom of Information Specialist, who used the plaintiff's name, Social Security Number, and date of birth.

27. As a result of the query, NADDIS identified six (6) criminal investigative case files in which information regarding the plaintiff was located. For each investigative case file number a corresponding field file and information system file, for a total of 12 responsive files, exists.

28. As a result of the SARO search that was conducted, 40 pages were identified as responsive to the plaintiff's request. Of the 40 pages, 23 pages were withheld in their entirety. Information was withheld pursuant to FOIA exemptions (b)(2), (7)(C), (7)(D), (7)(F), and the Privacy Act, 5 U.S.C. § 552a(j)(b)(2). A *Vaughn* index detailing DEA's withholdings pursuant to the asserted FOIA exemptions has been prepared, and it is attached as Exhibit O.

29. The search of the field files and headquarters systems that resulted in the identification of the 40 pages consumed two (2) hours. Pursuant to 28 C.F.R. § 16.11(d)(3), except for requesters seeking records for a commercial use, components will provide without charge the first 100 pages of duplication (or the cost equivalent) and the first two (2) hours of search (or the cost equivalent). The search time allowed the plaintiff without charge has been exceeded.

Therefore, the plaintiff is not entitled to any additional searches absent payment of the required fees.

## DESCRIPTION OF RESPONSIVE MATERIAL

30. The investigative information responsive to the plaintiff's request is criminal investigatory data compiled for law enforcement purposes. The information was collected pursuant to DEA's law enforcement responsibility which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, and placed into DEA investigative case files that are maintained in IRFS.

31. DEA investigative case files are established by the office commencing an investigation. The files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened. DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest.

32. Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file. This information relates to the case subject and may also include other individuals such as those who are suspected of engaging in criminal activity in association with the subject of the file.

33. Investigative case files maintained in IRFS contain several records that include, in pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a,

-9-

(b)(2) the DEA Personal History Report, DEA Form 202, (3) the DEA Defendant Disposition

Report, and other documents that may serve as a substitute for the forms.

34. The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA ROI.

The forms are used by DEA to memorialize investigative and intelligence activities and

information. The DEA Form 6 is the initial page of the ROI and consists of 15 numbered blocks.

Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom. The middle of

the page is the narrative section in which investigative and intelligence information is recorded.

35. The DEA Form 6a is the continuation page of the ROI and consists of six (6) numbered

blocks appearing at the top followed by the narrative section, in which investigative and

intelligence information is recorded, that extends to the bottom of the page.

36. The DEA Form 6, Block 4, and DEA Form 6a, Block 2, contain a G-DEP identifier. The

DEA Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special

Agents and other law enforcement personnel. The DEA Form 6, Block 6, and DEA Form 6a,

Block 3, contain the file title, which is generally the subject of the investigation.

37. The narrative may be broken into several sections which include a "Synopsis," "Details,"

"Evidence," and/or "Indexing" sections. The "Synopsis" and "Details"sections document events

that often contain names of third-parties and law enforcement personnel, and information about

individuals. The "Evidence" section is used to document and note the collection of evidence and the disposal of items.

38. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate those individuals and entities of investigative interest that the agent or intelligence analyst designates to be listed in NADDIS. In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations.

39. The DEA Personal History Report, DEA Form 202, is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (b)(2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index. The form consists of 76 blocks that are completed depending on the circumstances.

40. The DEA Form 202, July 1996 version, Block 1, contains the file title, which is generally the subject of the investigation. Block 5 contains a G-DEP identifier; blocks 68, 69, 71, 72, 74, and 75 normally contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. Blocks 8 through 46 contain identifying information about the

-11-

individual to whom the form pertains. Blocks 47 through 67 contain information related to and explaining the action being taken.

41. The DEA Form 202, January 1977 version, Block 4, contains the file title, which is generally the subject of the investigation. Block 2 contains a G-DEP identifier; blocks 65, 66, 68, 69, and 71 contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. Blocks 3 through 44 contain identifying information about the individual to whom the form pertains. Blocks 45 through 64 contain information related to and explaining the action being taken.

42. DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA defendants. A separate DEA Form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts. The DEA Form, May 1982 version, consists of 25 blocks of which Block 4 contains the G-DEP identifier; Block 5, the file title; Blocks 2 and 17, the defendant's name; Block 3, the defendant's NADDIS number; Blocks 17-21, personal information and identifiers of the defendant; and, Blocks 24 and 25, the names and signatures of a DEA Special Agent and/or other law enforcement officers.

43. In this case, the 40 pages of responsive information consist of:

    (a). 10 DEA ROIs;

    (b). six (6) DEA Personal History Reports;

(c). one (1) DEA Defendant Disposition Report;

(d). five (5) DEA Acquisition of Non-Drug Property and Regulatory Seizures; and,

(e). one (1) page containing the plaintiff's mug shots and identifying information

44. Detailed discussions of the basis and jurisdiction for invoking the Freedom of Information Act exemptions for all of the redacted material, are set forth below. The exemptions utilized by DEA to withhold material are the Privacy Act, Exemption (j)(b)(2), and the Freedom of Information Act, Exemptions (b)(2), (7)(C), (7)(D), and (7)(F).

## **APPLICATION OF EXEMPTIONS**

### **Privacy Act Exemption (j)(2)**

45. DEA is a component of the Department of Justice whose primary responsibility is the enforcement of Federal criminal laws related to the illicit trafficking in controlled substances and chemicals, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq*. See 28 C.F.R. § 0.100.

46. IRFS is a Privacy Act System of Records that was last reported at 77 Fed. Reg. 3410 and last published in its entirety at 61 Fed. Reg. 54219. In accordance with the Privacy Act, rules were promulgated, pursuant to 5 U.S.C. §552a(j)(b)(2), to exempt records contained in IRFS from access. *See* 28 C.F.R. §16.98(c)(3).

47. In accordance with the Privacy Act, 5 U.S.C. §552a, except pursuant to a written request by, or with prior written consent of, the individual to whom the record pertains, no information

relating to a third-party was released, unless required by the FOIA or pursuant to a routine use. No routine use exists for and the plaintiff did not provide a release authorization or proof of death for the release of any third-party information. Therefore, all third-party information was withheld where release was not required by the FOIA.

## **Internal Rules and Practices**

### **FOIA Exemption (b)(2)**

48. The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency.

49. Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, many of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, and NADDIS numbers. The G-DEP and NADDIS numbers are part of DEA's internal system of identifying information and individuals.

> G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

> NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest. Each number is

-14-

unique and is assigned to only one violator within the DEA NADDIS indices. Thus, Exemptions (7)(C) and (7)(F) were used in conjunction with (b)(2) to withhold third-party NADDIS numbers.

The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings. Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension and create alibis for suspected activities. Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts. All G-DEP codes found in the responsive pages are withheld.

50. NADDIS numbers are unique and personal to the individual to whom the number applies. They are assigned by DEA for internal use and there is no public interest in the release of these codes.

## Records or Information Compiled for Law Enforcement Purposes

### FOIA Exemption (7) Threshold

51. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq.* (hereinafter, the Act) which authorizes DEA to enforce the Act through, for example, the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals and the violators who operate at

interstate and international levels; seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange information in support of drug traffic prevention and control.

52. The records deemed responsive to the plaintiff's FOIA request are criminal investigative records. The records were compiled during criminal law enforcement investigations of the plaintiff and several third-parties.

## Invasion of Personal Privacy

### FOIA Exemption (7)(C)

53. The FOIA, 5 U.S.C. § 552 (7)(C) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Many of the documents processed in response to plaintiff's FOIA request contain names and other identifying information which would reveal the identity of and disclose personal information about third-parties who were involved or associated with the plaintiff or with a law enforcement investigation. These individuals are protected from the disclosure of their identities and information about them. These individuals include third-parties, suspects, co-defendants, and confidential sources of information.

54. In making the determination to release or withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals'

-16-

identities. In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals. Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

55. In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (7)C), and release of any information about a third-party would constitute an unwarranted invasion of that third-party's personal privacy.

56. The identities of DEA Special Agents, an Internal Revenue Service Special Agent, an Organized Crime Drug Enforcement Task Forces (OCDETF) Special Agent, and state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigation.

-17-

57. The Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of these individuals.

58. Government employees were assigned to handle tasks relating to the official investigations into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees.

## Confidential Sources and Information Obtained from Confidential Sources

### FOIA Exemption (7)(D)

59. The FOIA, 5 U.S.C. § 552 (7)(D) sets forth an exemption for the information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source. Exemption (7)(D) was employed to withhold certain reports in part, and others in their entirety,

that contained information that would disclose the identity of and the information provided by the source.

60. Sources of information include those about whom, based upon the facts and circumstances, confidentiality could be implied. Each document or group of related pages that contain material provided by individual(s), other than a DEA agent, was examined in light of exemption (7)(D) to determine whether confidentiality was express or implied.

## Sources with Implied Confidentiality

61. When it cannot be ascertained that a source was found to have been expressly made a promise of confidentiality, certain circumstances characteristically may support an inference of confidentiality, such as the character of the crime being investigated, and the source's relation to the nature of the crime.

62. Page "26" is the first page of a three-page ROI describing the acquisition of non-drug exhibits. Paragraphs 1 and 2 contain the identity of and information regarding a named confidential source and a third-party.

63. Page "70" is the first page of a two-page ROI containing the Case Initiation Report of the plaintiff's DEA investigation. The page contains information from a confidential source, who provided information about the drug trafficking activities of third-parties.

64. The plaintiff was arrested for conspiracy to distribute cocaine, and convicted of conspiracy

to distribute and the delivery of marijuana. It is reasonable to infer that the individuals who

provided information about the plaintiff would fear for their safety, since violence is inherent in

the trade in illicit substances such as cocaine and marijuana, if their identities or the information

they provided was revealed. Additionally, release of the name of the sources could jeopardize

DEA operations, since their cooperation and that of other similarly situated individuals could be

needed in future criminal investigations.

## Safety of Law Enforcement Personnel and Other Individuals

## FOIA Exemption (7)(F)

65. The FOIA, 5 U.S.C. § 552(b)(7)(F), sets forth an exemption for records or information

compiled for law enforcement purposes the disclosure of which could reasonably be expected to

endanger the life or physical safety of an individual.

66. The names of DEA Special Agents, Supervisory Special Agents, other Federal special

agents, task force officers, state/local law enforcement officers, suspects, third-parties and

confidential sources were withheld pursuant to Exemption (b)(7)(F). This information was also

withheld pursuant to Exemption (b)(7)(C) and (b)(7)(D).

67. DEA Special Agents and Supervisory Special Agents, as well as other law enforcement

officers, are frequently called upon to conduct a wide variety of investigations, including

sensitive and dangerous undercover operations. Special agents, task force and other law

enforcement officers, and confidential sources routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies.

68. It has been the experience of DEA that violence is inherent in the drug trade and the release of the identities of law enforcement officers, third parties and confidential sources has, in the past, resulted in several instances of physical attacks, threats, harassment, murder and attempted murder. The names were withheld since it was reasonable to conclude that identifying them could subject them to harassment, reprisal and/or physical retaliation for providing information or being connected with the investigation in any way.

69. In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the FOIA, DEA would be releasing this data into the public realm. DEA considers it to be within the public interest not to disclose the identity of special agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful operation of DEA, as well as risk harassment and danger to its agents and other law enforcement personnel.

## SEGREGABILITY

70. All of the responsive information was examined to determine whether any reasonably segregable information could be released. Pages were withheld in their entirety where, based

upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (b)(2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third-parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.

71. Reasonably segregable also involved consideration of the time and effort that would be expended to exclude or include information in a record or document being processed. The current redaction process employed by DEA entails the use of translucent red cellophane tape. After the tape is applied, the document is copied and the information intended to be withheld is blackened in the copying process.

72. Once tape is applied, it generally cannot be removed. The tape lifts the print from the paper, if removal is attempted or if it inadvertently touches print not intended to be withheld. The page must then be recopied and the process begun again. The process of applying a thin strip of tape is tedious, cumbersome and time consuming; however, it is the most effective and efficient means currently available to DEA to withhold information based upon the manner and methods in which DEA records information and maintains its records. Consequently, the importance of

releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page.

73. In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business. Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.

74. Pages "4" and "5" comprise a two page ROI regarding one of the plaintiff's DEA drug investigations. The report was generated to correct misreported information related to third-parties. No information regarding the plaintiff is contained in the report. The plaintiff's name and NADDIS number appear in the indexing section only. Once information regarding the third-parties and the internal designations are withheld, only incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C), and (7)(F).

75. Pages "11" through "12", "13" through "14", "15" through "16", and "17" through "18" comprise four (4) DEA Personal History Reports, DEA Form 202s, related to four (4) separate third-parties. The reports contain identifying information related to the third-parties, information about the third-parties, their family members and associates, and information regarding their arrests. The plaintiff's name and NADDIS number are included on the first pages of the reports

as a criminal associate in Block 43a. After redacting all the withholdable information, only the plaintiff's name and NADDIS number, and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C), (7)(D) and (7)(F).

76. Pages "24" and "25" comprise an unsigned three-page ROI that memorializes an interview of a named confidential source, who provided information about the his/her drug trafficking interaction with the plaintiff and third-parties. Information about the plaintiff is found in two paragraphs on page "24". The information about the plaintiff is inextricably intertwined with information about third-parties and the of any information could enable the plaintiff to identify the confidential source and the third-parties. After redacting all the withholdable information, only the plaintiff's name and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C), (7)(D), and (7)(F).

77. Page "27" is the second page of a three-page ROI describing the acquisition of non-drug exhibits. The page contains information about the receipt of non-drug exhibits with the assistance of a named confidential source and information related to third-parties. Neither the plaintiff's name nor information about the plaintiff is contained on the page. After redacting all the withholdable information, only the plaintiff's name and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (7)(C), (b)(7)(D), and (7)(F).

78. Pages "31" through "33" comprise a three-page ROI memorializing the interviews of three (3) named confidential sources, who provided information about the drug trafficking activities of themselves, the plaintiff, and third-parties. Information about the plaintiff is found in one sentence on page "32", and in the Indexing Section on page "33". The information about the plaintiff is inextricably intertwined with information about two of the confidential sources and third-parties. Release of any information could enable the plaintiff to identify the confidential sources and third-parties. After redacting all the withholdable information, only the plaintiff's name and NADDIS number, and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the report was withheld in its entirety pursuant to FOIA exemptions (b)(2), (7)(C), (7)(D), and (7)(F).

79. Pages "34" through "36" comprise a three-page ROI containing information regarding the identification of individuals by two (2) named confidential sources. Information about the plaintiff is found in the second paragraph of the report and his name and NADDIS number are contained in the Indexing Section. The information about the plaintiff is inextricably intertwined with information about the confidential sources and third-parties. Release of any information could enable the plaintiff to identify the confidential sources. After redacting all the withholdable information, only the plaintiff's name and NADDIS number, and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C) and (7)(F).

80. Pages "37" through "39" comprise a three page ROI that memorializes the interviews of two named confidential sources, who provided information about the drug trafficking activities of themselves, the plaintiff, and third-parties. Information about the plaintiff is found in two paragraphs on page "37", and his name is mentioned in the Indexing Section on page "39". The information about the plaintiff is inextricably intertwined with information about the confidential sources and third-parties. Release of any information could enable the plaintiff to identify the confidential source and third-parties. After redacting all the withholdable information, only the plaintiff's name and NADDIS number, and incomprehensible words and phrases that would not shed any light on how the Government conducts business would remain. Thus, the pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (7)(C), (b)(7)(D), and (7)(F).

81. The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my information and belief.

_7-17-08_
DATE

_Leila I. Wassom_

Leila I. Wassom
Paralegal Specialist
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C.  20537

-26-

# EXHIBIT A

OPERATIONS UNIT
SARO

2008 AUG 15 PM 2: 38

AGENCIES:

( ) United States Parole Commission
( ) Federal Bureau of Investigation
( ✓ ) Immigration & Naturalization service
( ) Internal Revenue Service
( ) United States Attorney
( ) Treasury Department
( ) Bureau of Prisons
( ) State Agency
( ) Other: _D.E.A_____

DIRECT RESPONSE TO:

Name:

Reg. No.:

Unit:

Date:

TO: _Office Division Control_

_2401 Jefferson Davis Highway_

_Alexandria, VA 22301_

IDENTIFICATION OF REQUESTER:
NAME: _Juan Bordas_
ALIAS: _Guacaco_
DATE OF BIRTH: _6/24/35_
PLACE OF BIRTH: _Habana-Cuba_
F.B.I. NO:
SOC. SEC. NO: _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_
OTHER:

RE:  FREEDOM OF INFORMATION ACT
( U.S.C. 552), PRIVACY ACT
(5 U.S.C. 552a (d) (1)) Request:
EXEMPTIONS (5 U.S.C. 552 (6) (C)
(B) (7)), GENERAL ( U.S.C. 552 A
(J) (2)) OR SPECIFIC ( U.S.C.
552 a (k) (2)) NOT APPLICABLE TO
THIS REQUEST.

Right Thumb          Right Index



RT          RI

Dear Sir/Ms:

This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 52a (d) (1), and the applicable State Statutes governing Freedom of Information Requests if state agency request, for full disclosure and release of all records and / or data contained in the files of your agency, and specifically under my name and / or an identifier assigned to my name. This request is sought specifically for amendment, deletion and / or expungment (5 U.S.C. 552a (d) (2) (a)) of records maintained by your Agency. The records sought but not limited to, is the compiled file containing (1) arrest records, (2) investigation and / or investigatory reports, (3) reports or evidentiary and / or scientific information findings, (4) wants, warrants, and / or detainers, (5) final and closing investigation reports: and (6) any and / or all information, data, or reports not otherwise exempt by statute (5 U.S.C. (66) (c) (b) (7)), (5 U.S.C. 52a (j) (2), (k) (2), or law, Tarlton. v. Saxbe. 507, F.2d. 1116. 165 U.S. App. D.C. 293 (1974). Menard v. Saxbe. 498 F 2d. 1017, 162 U.S. App. D.C. 284 (1974), Sullivan v. Murphy, 478 F. 2d. 938. 156 U.S. App. D.C. 28 (1973). Your Agency is advised that the investigation reports in toto are no longer accorded exempt status unless under the specific exemption noted. and only with reference to specific citation of authority. Paton v. La Prade. 524 F.2d 862. 868-69. (CA3 1975).

Examples of specific requests:

1). *Please, send me, all documents, in your file, pertaining to me, and for my Criminal Record. U.S. vs Juan Bredas*

2). *case N°*

3).

4).

5).

6).



It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and / or any material therein contained has been released to any identifiable individual or agency, their name, title, purpose and need for such information, the date of such release, the specific material that was released, the person within your Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d) (1)), Paton v. La Parde, 524 F.2d 862 (CA3 1975), Tarlton v. Saxbe, 507 F.2d 1116, 165 U.S. App. D.C. 293 91974), of Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d. 536. (1973).

It is further requested that your Agency provide me with a copy of specific regulations or your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a) (together with the "alternate means of access"), to permit access to records on file with your Agency. If and for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. (6) (c) (b) (7), 552a (j) (2), (k) (2) or by regulation (Menard v. Mitchell, 430 F.2d. 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 446 F. Supp. 102) I request specific citation to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from the material for release. Paton v. LaParde, 524 F. 2d 862 (CA3 1975), Chastain v. Kelly, 510 F. 2d. 1232. I further agree to pay any reasonable costs, or file IN FORMA PAUPERIS if I am indigent, provided by statute or regulation of your agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. 552 (6) (1) (1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulation and the date as to when your Agency will be able to act upon request.

Yours truly,

Dated: 8/10/06

(3)

U.S. Department of Justice

## Certification of Identity



**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Failure to furnish this information will result in no action being taken on the request. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 522a(i) (3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to Director, Facilities and Administrative Services Staff, Justice Management Division, U.S. Department of Justice, Washington, DC 20530 and the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] _Juan B. Bordas_

Current Address _P.O. Box 779800_

Date of Birth _6/24/35_

Place of Birth _Habana – Cuba_

Social Security Number [2] _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_

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

Signature [3] _Bordas_　　　　　　　　Date _8/10/06_

## Optional: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. § 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

_____
(Print or Type Name)

[1] Name of individual who is the subject of the record sought.
[2] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.
[3] Signature of individual who is the subject of the record sought.

# EXHIBIT B

AGENCIES:

( ) United States Parole Commission
( ) Federal Bureau of Investigation
( ) Immigration & Naturalization service
( ) Internal Revenue Service
( ) United States Attorney
( ) Treasury Department
( ) Bureau of Prisons
( ) State Agency
(X) Other: _D.E.A_ ,

DIRECT RESPONSE TO:

Name: *Juan Bordas*

Reg. No.: *50700-004*

Unit: *Gator*

Date:

TO: *Mailstop A.E.S.*
*2401 Jefferson Davis Hwghy*
*Alexandria V.A 22301*

IDENTIFICATION OF REQUESTER:
NAME: *Juan B. Bordas*
ALIAS: *coco, Giraroo, Rooo Aqua, Aguacoco*
DATE OF BIRTH: *6/24/35*
PLACE OF BIRTH: *S.Batabano* (HABANA-Cu*)
F.B.I. NO:
SOC. SEC. NO: *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*
OTHER:

RE:  FREEDOM OF INFORMATION ACT
( U.S.C. 552), PRIVACY ACT
(5 U.S.C. 552a (d) (1)) Request:
EXEMPTIONS (5 U.S.C. 552 (6) (C)
(B) (7)), GENERAL ( U.S.C. 552 A
(J) (2)) OR SPECIFIC ( U.S.C.
552 a (k) (2)) NOT APPLICABLE TO
THIS REQUEST.

Right Thumb          Right Index



RT          RI

Dear Sir/Ms:

This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 52a (d) (1), and the applicable State Statutes governing Freedom of Information Requests if state agency request, for full disclosure and release of all records and/or data contained in the files of your agency, and specifically under my name and/or organ identifier assigned to my name. This request is sought specifically for amendment, deletion and / or expungment (5 U.S.C. 552a (d) (2) (a)) of records maintained by your Agency. The records sought but not limited to, is the compiled file containing (1) arrest records, (2) investigation and / or investigatory reports, (3) reports or evidentiary and / or scientific information findings, (4) wants, warrants, and / or detainers, (5) final and closing investigation reports; and (6) any and / or all information, data, or reports not otherwise exempt by statute (5 U.S.C. (66) (c) (b) (7)), (5 U.S.C. 52a (j) (2), (k) (2), or law, Tarlton. v. Saxbe. 507 F.2d. 1116. 165 U.S. App. D.C. 293 (1974). Menard v. Saxbe. 498 F 2d. 1017, 162 U.S. App. D.C. 284 (1974), Sullivan v. Murphy, 478 F. 2d. 938, 156 U.S. App. D.C. 28 (1973). Your Agency is advised that the investigation reports in toto are no longer accorded exempt status unless under the specific exemption noted, and only with reference to specific citation of authority. Paton v. La Prade. 524 F.2d 862, 868-69. (CA3 1975).

Examples of specific requests:

1). *Please, Send me, all Documents, in Your file, pertaining to me or my criminal case #6:98-135-Orlando 19A Middle District Court*

2). *Orlando, Florida.*

3).

4).

5).

6).

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and / or any material therein contained has been released to any identifiable individual or agency. their name. title. purpose and need for such information, the date of such release. the specific material that was released, the person within your Agency who released such information, and the specific reference to authority, statute or regulation. governing such release (5 U.S.C. 52a (d) (1)), Paton v. La Parde, 524 F.2d 862 (CA3 1975), Tarlton v. Saxbe. 507 F.2d 1116, 165 U.S. App. D.C. 293 91974), of Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d. 536. (1973).

It is further requested that your Agency provide me with a copy of specific regulations or your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a) (together with the "alternate means of access"), to permit access to records on file with your Agency. If and for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. (6) (c) (b) (7), 552a (j) (2), (k) (2) or by regulation (Menard v. Mitchell. 430 F.2d 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 446 F. Supp. 102) I request specific citation to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from the material for release. Paton v. LaParde, 524 F. 2d 862 (CA3 1975), Chastain v. Kelly, 510 F. 2d. 1232. I further agree to pay any reasonable costs, or file IN FORMA PAUPERIS if I am indigent, provided by statute or regulation of your agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. 552 (6) (1) (1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulation  and the date as to when your Agency will be able to act upon request.

Yours truly,

*Bordas*

*Juan Borda*

*Federal Correctional Institution*

*P. O. Box 779800*

*Miami, Fla 33177*

Dated: 10/24/06

(3)

# EXHIBIT C



**U.S. Departme\_\_ of Justice**
Drug Enforcement Administration

OCT 3 1 2006

---

*Case Number:* 06-1455-P

*Subject of Request:* BORDAS, JUAN (Criminal/Court Case: U.S. v JUAN BORDAS)

Juan Bordas #50700-004
Federal Correctional Institution
P.O. Box 779800
Coleman, FL 33521

Dear Juan Bordas:

     The Drug Enforcement Administration (DEA) has received your correspondence dated August 10, 2006, seeking access to information pertaining to you pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a. We have reviewed your request and found it to be deficient.

     First, I apologize for the amount of time it has taken to review your initial request letter. We are at this time experiencing a large backlogging of incoming FOI/PA requests that have adversely impacted our response time to the public. However, this matter has not impacted the quality of our service and our dedication to the public at large, including your request.

     Your request has been assigned the above number. Please include this number in any future correspondence to this office regarding this request.

     In regard to your Criminal/Court Case: U.S. v. Juan Bordas, please be advised that the DEA does not index its investigative records using criminal/court cases or docket numbers. In general, our investigative files are maintained and retrieved by general file references or file numbers assigned by this Agency. We would only maintain records pertaining to your criminal investigation if the DEA participated in that investigation. However, you could assist our efforts by providing your date of arrest, date of your sentencing, a DEA investigative file number and/or the name of the DEA agent who conducted the investigation.

     In regard to your request for a waiver of fees, please be advised that your request as constituted does not qualify for a waiver/reduction of fees. Further, indigence alone without the showing of a public benefit is insufficient to warrant a waiver of fees. This letter confirms your obligation as stated in your request letter, that by filing your request, you have agreed to remit any applicable fees charged under 28 C.F.R. 16.11, up to $25.00. For fee assessment purposes, you have been categorized as an "all other" requester. You will be afforded the first two (2) hours of search, and the first 100 pages of duplication at no charge. You will be notified at a later date of any/all applicable fees in which payment is required prior to the release of the requested records.

2

To this end, no further action will be taken regarding your request until we are in receipt of your response.  Please forward your response to the following address:

> Drug Enforcement Administration
> Freedom of Information Section
> Washington, D.C. 20537

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

64

# EXHIBIT D

AGENCIES:

( )   United States Parole Commission
( )   Federal Bureau of Investigation
( )   Immigration & Naturalization service
( )   Internal Revenue Service
( )   United States Attorney
( )   Treasury Department
( )   Bureau of Prisons
( )   State Agency
(X)   Other: _Drug Enforcement Administration_

TO:

DIRECT RESPONSE TO:

Name: _Juan B. Bordas_

Reg. No.: _50700-004_

Unit: _Gator_

Date: _11/14/06_

IDENTIFICATION OF REQUESTER:
NAME: _Juan B. Bordas_
ALIAS: _Coco, Aguacoco, guacoco, coguito, coco de agua_
DATE OF BIRTH: _8/24/35_
PLACE OF BIRTH: _HABANA - CUBA_
F.B.I. NO:
SOC. SEC. NO: _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_
OTHER:

RE:    FREEDOM OF INFORMATION ACT
( U.S.C. 552), PRIVACY ACT
(5 U.S.C. 552a (d) (1)) Request:
EXEMPTIONS (5 U.S.C. 552 (6) (C)
(B) (7)), GENERAL ( U.S.C. 552 A
(J) (2)) OR SPECIFIC ( U.S.C.
552 a (k) (2)) NOT APPLICABLE TO
THIS REQUEST.

Right Thumb          Right Index



RT                         RI

Dear Sir/Ms:

This letter will serve as my request pursuant to the provisions of the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 52a (d) (1), and the applicable State Statutes governing Freedom of Information Requests if state agency request, for full disclosure and release of all records and / or data contained in the files of your agency, and specifically under my name and / or an identifier assigned to my name. This request is sought specifically for amendment, deletion and / or expungment (5 U.S.C. 552a (d) (2) (a)) of records maintained by your Agency. The records sought but not limited to, is the compiled file containing (1) arrest records, (2) investigation and / or investigatory reports, (3) reports or evidentiary and / or scientific information findings, (4) wants, warrants, and / or detainers, (5) final and closing investigation reports: and (6) any and / or all information, data, or reports not otherwise exempt by statute (5 U.S.C. (66) (c) (b) (7)), (5 U.S.C. 52a (j) (2), (k) (2), or law, Tarlton. v. Saxbe. 507, F.2d. 1116. 165 U.S. App. D.C. 293 (1974). Menard v. Saxbe. 498 F 2d. 1017, 162 U.S. App. D.C. 284 (1974), Sullivan v. Murphy, 478 F. 2d. 938. 156 U.S. App. D.C. 28 (1973). Your Agency is advised that the investigation reports in toto are no longer accorded exempt status unless under the specific exemption noted. and only with reference to specific citation of authority. Paton v. La Prade. 524 F.2d 862. 868-69. (CA3 1975).

Examples of specific requests:

1). Please, send me, all documents in my name in these case, pertaining, to me or my Criminal case U.S.vs Juan Bordas or mentionated alias

2). 

Case # 98-1034-01 thru 03
Case # 95-32-CR-ORL-22
Case # 96-32-CR-ORL-19

3). Case # 98-135-CR-ORL-19A

4). 

5). 

6). 

(2)

It is further requested that your agency in response to the material requested specifically inform me if and to whom the file and / or any material therein contained has been released to any identifiable individual or agency, their name, title, purpose and need for such information, the date of such release, the specific material that was released, the person within your Agency who released such information, and the specific reference to authority, statute or regulation, governing such release (5 U.S.C. 52a (d) (1)), Paton v. La Parde, 524 F.2d 862 (CA3 1975), Tarlton v. Saxbe, 507 F.2d 1116, 165 U.S. App. D.C. 293 91974), of Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed. 2d. 536. (1973).

It is further requested that your Agency provide me with a copy of specific regulations or your Department as provided by statute (5 U.S.C. 552), so that compliance with such regulations is adhered to except as otherwise provided by law (5 U.S.C. 701 et. seq.).

This request is made under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a) (together with the "alternate means of access"), to permit access to records on file with your Agency. If and for any reason it is determined that portions of the material and records sought is exempt by statute (5 U.S.C. (6) (c) (b) (7), 552a (j) (2), (k) (2) or by regulation (Menard v. Mitchell, 430 F.2d. 486, 139 U.S. App. D.C. 113 (1970), Nemetz v. Department of Treasury, 446 F. Supp. 102) I request specific citation to authority for such deletion. If it should be determined that any material be deemed CONFIDENTIAL due to identification of source, the permission is granted to Agency to delete source identification ONLY from the material for release. Paton v. LaParde, 524 F. 2d 862 (CA3 1975), Chastain v. Kelly, 510 F. 2d. 1232 I further agree to pay any reasonable costs, or file IN FORMA PAUPERIS if I am indigent, provided by statute or regulation of your agency, for search and copying of the material requested.

Pursuant to Title 5 U.S.C. 552 (6) (1) (1), it is noted that your Agency has ten (10) working days following receipt of this request to provide the information and material sought. Should any delay occur, it is requested that your Agency inform me of this delay as provided by Agency regulation and the date as to when your Agency will be able to act upon request.

Yours truly,

Juan Bordas

Dated: _11-14-06_

(3)



Nov 14/06

Drug Enforcement Administration

Case#06-1455-P

Dear Sir: I am send the name of the your Agency, agents

in my case, date of arrest, sentence day, case number etc.

  John Gowan: Task Force Agent with the United State
Drug Enforcement Administration (DEA) in Orlando, Florida.
He have assisted DEA Special Agent (SA) Hayward Lampley,
since 1,990 in Brevard and Dade Counties, Florida, and the
State of Maryland.
    Case NO 98-1034-01 thru 03 (in this case)
    CASE NO 95-32-CR-ORL-22 (in this case)
    Case NO 96-32-CR-ORL-19 (in this case)
My case "Case NO 98-135-CR-ORL-19A"
Arrest day March 13 1,998, Sentence day March 2 1999 Orlando, Fla

Please send me, all documents, in these file, pertaining to me and
or my Criminal case: U.S. vs Juan Bordas, in the before mentioned
cases in Orlando Florida., and the fees cost.

Frank K
Bordas
Juan Bordas (50700-004)
Federal Correctional Inst
P.O. Box 779800, Miami, Fla, 33177

# EXHIBIT E



**U.S. Department of Justice**

Drug Enforcement Administration

FEB 9 2007

**Case Number: 06-1455-P**

**Subject of Request: BORDAS, JUAN**

Juan Bordas
Reg. No.: 50700-004
FCI Miami
P.O. Box 779800
Miami, Florida 33177

Dear Juan Bordas:

The Drug Enforcement Administration (DEA) has received your most recent letter dated November 14, 2006 in which you provided additional information regarding your request.

We have constituted your request as a *"Self/First Party"* request. Accordingly, we have reopened your request and placed it on a list of requests waiting processing. In order to expedite all requests that require retrieval, processing and duplication of documents, your request will be handled in chronological order based on the date of this letter.

Again, your request has been assigned the above number. Please include this number in any future correspondence to this office regarding this request.

Please be advised as stated in our previous letter to you dated October 31, 2006, DEA does not index its investigative records using a Court/Criminal Case and/or Docket Number. Under the FOIA, agencies are not required to search for records not under the *control and custody* of that agency.

This letter confirms your obligation, as stated in your letter, that you have agreed to pay all applicable fees charged under 28 C.F.R. 16.11.

Please be assured that your request is being handled as equitably as possible. Upon completion of the initial search and/or processing, you will be notified of all applicable fees, *and payment will be required prior to release of any records*. If there are no fees associated with the processing of your request, all documents that can be released will be made available to you at the earliest possible date.

Sincerely,

Katherine J. Myrick

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

*99, 69*

# EXHIBIT F



**U.S. Department of Justice**
Drug Enforcement Administration

JUN 1 3 2007

Washington, D.C. 20537

Case Number: 06-1455-P

Subject: BORDAS, JUAN

Juan Bordas
P.O. Box 779800
Miami, FL 33177

Dear Juan Bordas:

Your Freedom of Information/Privacy Act request seeking information from the Drug Enforcement Administration has been processed.

The processing of your request identified certain materials that will be released to you. Portions not released are being withheld pursuant to the Freedom of Information Act, 5 U.S.C. 552, and/or the Privacy Act, 5 U.S.C. 552a. Please refer to the list enclosed with this letter that identifies the authority for withholding the deleted material, which is indicated by a mark appearing in the block next to the exemption. An additional enclosure with this letter explains these exemptions in more detail. The documents are being forwarded to you with this letter.

If you wish to appeal any denial of your request, you may do so within sixty (60) days from the date of this letter pursuant to 28 C.F.R. 16.9. The appeal should be sent to the following address, with the envelope marked "FOIA Appeal":

DEPARTMENT OF JUSTICE
OFFICE OF INFORMATION AND PRIVACY
NYAV BUILDING, 11TH FLOOR
WASHINGTON, D.C. 20530

For further information, see attached enclosure.

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

Enclosure

#95  9

Number of pages withheld:    23

Number of pages released:    17

Number of pages referred:    0

**APPLICABLE SECTIONS OF THE FREEDOM OF INFORMATION AND/OR PRIVACY ACT:**

Freedom of Information Act
5 U.S.C. 552

Privacy Act
5 U.S.C. 552a

[ ] (b)(1)      [ ] (b)(5)      [X] (b)(7)(C)          [ ] (d)(5)      [ ] (k)(2)

[X] (b)(2)      [ ] (b)(6)      [X] (b)(7)(D)          [X] (j)(2)      [ ] (k)(5)

[ ] (b)(3)      [ ] (b)(7)(A)    [ ] (b)(7)(E)          [ ] (k)(1)      [ ] (k)(6)

[ ] (b)(4)      [ ] (b)(7)(B)    [X] (b)(7)(F)

FREEDOM OF INFORMATION ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(b)(2)  Materials related solely to the internal rules and practices of DEA.

(b)(3)  Information specifically exempted from disclosure by another federal statute.

(b)(4)  Privileged or confidential information obtained from a person, usually involving commercial or financial matters.

(b)(5)  Inter-agency or intra-agency documents which are subject to a privilege, such as documents the disclosure of which would have an inhibitive effect upon the development of policy and administrative direction, or which represent the work product of an attorney, or which reflect confidential communications between a client and an attorney.

(b)(6)  Materials contained in sensitive records such as personnel or medical files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

(b)(7)  Records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings; (B) would deprive a person of a right to a fair trial or an impartial adjudication; (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis; and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source; (E) would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

PRIVACY ACT
SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  Materials compiled in reasonable anticipation of a civil action or proceeding.

(j)(2)  Material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.

(k)(1)  Information which is currently and properly classified pursuant to Executive Order in the interest of the national defense or foreign policy.

(k)(2)  Material compiled during civil investigations for law enforcement purposes.

(k)(5)  Investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to an express promise that his identity would be held in confidence, or pursuant to an implied promise of confidentiality if such information was furnished prior to September 27, 1975.

(k)(6)  The substance of tests used to determine individual qualifications for appointment or promotion in Federal Government Service.

# EXHIBIT G



**U.S. Depar. .ent of Justice**
Drug Enforcement Administration

**JUN 1 3 2007**

Washington, D.C. ·20537

Case Number: 06-1455-P

Subject: BORDAS, JUAN

Fee Required: $168.00

Juan Bordas
P.O. Box 779800
Miami, FL 33177

Dear Juan Bordas:

Pursuant to your request, a search of the Drug Enforcement Administration (DEA) investigative files has been conducted. The enclosed documents represent all material available to you that either name the above subject, as the subject of an investigation, or report an investigation that resulted in the indictment and/or arrest of the above subject.

The above referenced subject is mentioned in other "related" files, but we have neither searched for nor processed any documents that might be found in these files. The great majority of requesters are interested only in obtaining documents that are within files that identify them as the subjects of a DEA investigation. To expedite the handling of all requests and to reduce or eliminate possible costs to requesters, DEA does not routinely process documents that may be located in other files and may merely mention the subject of the request.

Each referenced file takes approximately two hours to hand search. Our records show the subject of the request to be mentioned in four files. You will be responsible for the search fee for three files, two hours per file, $28.00 an hour, for an approximate total of $168.00. Under the Office of Management and Budget and Department of Justice Guidelines, only when it has been clearly shown that the release of requested documents will serve some overriding public interest, will a fee waiver be granted.

A complete search for related files in which the subject of your request may be mentioned does not guarantee that those documents will be released. Some or all of them may fall under exemptions to the FOIA. However, the government incurs substantial costs in reviewing these non-subject related files.

2

Should you desire a full search of the "related" files, please indicate on the bottom of this page that you will be responsible for the payment of the search fees. When your request is completed, a final exact bill for payment will be sent to you. Failure to pay after notification of an agreement to pay will result in the strict enforcement of the Debt Collection Act of 1962, Pub. L.97-365.

Sincerely,

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

_____

Juan Bordas

# EXHIBIT H

07 - 2162

7OIA
(A)
DEA

Case # 06-1455-P

Mrs: Katherine L Miriek
Chief Operations Unit
F.O.I. Records Management.

Dear Mrs Katherine: In this moment, I wish to
appeal the request (b)(7)(C), (b)(7)(D), in a further
I will send the other record that I need.

Thank for You attention

Sincerely.

Juan Bordes **App**
50700-004
Federal Correctional Institution
P.O. Box 779800
Miami, Fla 33177

**RECEIVED**

AUG - 9 2007

Office of Information and Privacy

2

Should you desire a full search of the "related" files, please indicate on the bottom of this page that you will be responsible for the payment of the search fees. When your request is completed, a final exact bill for payment will be sent to you. Failure to pay after notification of an agreement to pay will result in the strict enforcement of the Debt Collection Act of 1962, Pub. L.97-365.

Sincerely,

*Katherine Myrick*

Katherine L. Myrick
Chief, Operations Unit
FOI/Records Management Section

*Bordas*

Juan Bordas

# EXHIBIT I



**U.S. Department of Justice**

Office of Information and Privacy

_____

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_

AUG 1 4 2007

Mr. Juan Bordas
Register No. 50700-004
Federal Correctional Institution
P.O. Box 779800
Miami, FL 33177

            Re:  Request No. 06-1455-P

Dear Mr. Bordas:

        This is to advise you that your administrative appeal from the action of the Drug
Enforcement Administration was received by this Office on August 9, 2007.

        The Office of Information and Privacy, which has the responsibility of adjudicating such
appeals, has a substantial backlog of pending appeals received prior to yours.  In an attempt to
afford each appellant equal and impartial treatment, we have adopted a general practice of
assigning appeals in the approximate order of receipt.  Your appeal has been assigned number
**07-2162**.  Please mention this number in any future correspondence to this Office regarding this
matter.

        We will notify you of the decision on your appeal as soon as we can.  We regret the
necessity of this delay and appreciate your continued patience.

                                    Sincerely,

                                    Priscilla Jones
                                    Supervisory Administrative Specialist

2007 AUG 16 PM 3: 58

SARO
OPERATIONS UNIT

DEA

# EXHIBIT J

**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_          _Washington, D.C. 20530_

DEC 0 7 2007

Mr. Juan Bordas
Register No. 50700-004
Federal Correctional Institution       Re:  Appeal No. 07-2162
P.O. Box 779800                             Request No. 06-1455-P
Miami, FL 33177                             ADW:CG

Dear Mr. Bordas:

You appealed from the action of the Drug Enforcement Administration (DEA) on your request for access to records concerning yourself.  I regret the delay in responding to your appeal.

The records responsive to your request are exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(j)(2).  See 28 C.F.R. § 16.98 (2007).  Because these records are not available to you under the Privacy Act, your request has been reviewed under the Freedom of Information Act in order to afford you the greatest possible access to them.

After carefully considering your appeal, I am affirming, on partly modified grounds, DEA's action on your request. DEA properly withheld certain information that is protected from disclosure under the FOIA pursuant to:

5 U.S.C. § 552(b)(2), which concerns matters that are related solely to internal agency practices;

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; and

5 U.S.C. § 552(b)(7)(F), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to endanger the life or personal safety of an individual.

If you are dissatisfied with my action on your appeal, you may file a lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

DEA

# EXHIBIT K



**U. S. Department of Justice**
**Drug Enforcement Administration**
Office of Chief Counsel
Administrative Law Section

---

*www.dea.gov*

APR 2 9 2008

Mr. Juan Bordas
Reg. No. 50700-004
Federal Correctional Institution
P.O. Box 779800
Coleman, Florida 33521

    Re: *Juan Bordas v. Department of Justice, Drug Enforcement Administration,*
       Case No. 08-0339 JDB

Dear Mr. Bordas:

      In conjunction with the above-captioned civil action, the Drug Enforcement
Administration (DEA) conducted a litigation review of your Freedom of Information
Act/Privacy Act (FOIA/PA) request dated August 10, 2006, and the file associated with DEA
FOIA Request No. 06-1455-P. As a result of that review, it was noted that the issue of the fee
associated with the processing of your request was not resolved and it was discovered that you
had attempted to communicate your intent to pay the fee originally indicated as $168.00.
However, since the portion of the DEA letter used to transmit your intent to pay was attached to
your incorrectly addressed and undated appeal to the Department of Justice, Office of
Information and Privacy, it was never directly received by the DEA Freedom of Information
Operations Unit. Before proceeding further in this matter, the fee issue must be resolved.

      In your letters to DEA, you requested "all records and/or data contained in the files of
[DEA] . . . " that are related to you. A query of the Narcotics and Dangerous Drug Information
System (NADDIS) indicates that you are mentioned in six (6) investigative case files. For each
investigative case file number, DEA maintains a field file and, available at DEA Headquarters,
are electronic versions or duplicates of reports associated with a case file number. On average,
the time to search for records or information available at DEA Headquarters for each file
reference is approximately two (2) hours and four (4) hours to search each field file, at the rate of
$28.00 per hour. Thus, if you wish to have all the field files searched and a search of DEA
Headquarters for each file reference, the estimated fee to conduct the search is $896.00.

      Some confusion may exist based upon the DEA Freedom of Information Operations Unit
letter of June 13, 2007, that informed you that the estimated fee was $168.00. The fee was
calculated solely on the basis of a search for information available at DEA Headquarters
associated with three (3) investigative case files and consideration was given to the limitations
on charging fees contained at 28 C.F.R. § 16.11(d)(3). The limitation imposed by 28 C.F.R. §
16.11(d)(3) is that "[e]xcept for requesters seeking records for a commercial use, components

Juan B. Bordas                                                                    Page 2
April 29, 2008

16.11(d)(3) is that "[e]xcept for requesters seeking records for a commercial use, components will provide without charge: (i) [t]he first 100 pages of duplication (or the cost equivalent); and (ii) [t]he first two hours of search (or the cost equivalent)."

DEA previously searched for information maintained at Headquarters for two (2) file reference numbers. The currently cited $896.00 fee is based upon an estimate to search six (6) field files and to search DEA Headquarters for information related to four (4) file references. Consideration was given to the two (2) hours of search without charge. That time was consumed during the search previously conducted that resulted in the identification of 40 pages of responsive information of which 17 pages were released. No further searches can be conducted without charge.

Given the discrepancy in the amount of the original estimated fee, however, you are afforded the opportunity to reformulate your request and, thereby, reduce the actual fee. The amount of the fee may be reduced in several ways. You may elect to have only DEA Headquarters systems or the field files searched, and/or specifying a period of time in which investigative case files were established or reports created. With regard to proving an index of the investigative case files, the files are as follows:

(1). GB-95-0005          (3). GB-99-0020          (5). GQ-86-0002
(2). GB-98-0109          (4). GH-79-0056          (6). G1-89-0354

Unless a search is conducted and the investigative information is identified, reviewed and summarized, no representations can be made as to the quality and quantity of the information contained in any particular case file or any particular report. Since the FOIA does not require that an agency create a record or conduct research, no further information, other than a listing of the case files in which you are mentioned and how the number is constructed can be provided.

DEA investigative case files are established by the office commencing an investigation. As it relates to the case file number, the first two characters represent the DEA office that commenced the investigation. The second two digits represent the fiscal year in which the investigation was opened. The last four digits represent the order in the fiscal year that the file was opened. Of the cases listed above, the files with the "GB" designation originated within the Orlando Division Office, the "GH" is the New Orleans Field Division, the "GQ" is the Mobile Resident Office and the "G1" is the Miami Field Division. The files were opened between 1979 and 1999.

In making a decision regarding the files you may wish to have searched, be advised that DEA does not maintain separate dossier investigative case files on individuals or entities that are of investigative interest. Files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened. Information collected during the course of a DEA investigation is systematically gathered and included in the investigative case file. This

Juan B. Bordas                                                                                    Page 3
April 29, 2008

information relates to the case subject and may also include other individuals such as those who
are suspected of engaging in criminal activity in association with the subject of the file.

DEA administratively designates files as *Subject* and *Defendant*.    Subject files are those in
which an individual's name is used as the *File Title*.   Defendant files are the investigative files in
which there exists a DEA Defendant Disposition Report.   The term "related file" has more than
one meaning.   However, for FOIA purposes, it refers to an investigative case file that is not
designated as a subject or defendant file *visa vie* an individual.   Of the six (6) file numbers that
relate to you, you were not the subject, but there are two (2), GB-95-0005 and GH-79-0056, in
which you are designated as a *Defendant*.   The remaining four files are considered *Related*.   As
of this time, only the files and systems located at DEA Headquarters associated with GB-95-0005
and GH-79-0056 have been searched.

Since the estimated fee exceeds $250.00, the Department of Justice Rules, contained in 28
C.F.R. 16.11 (i)(2), provide that requesters without a history of payment of fees will make an
advance payment.   DEA records do not indicate any history of payment on your part.   Therefore,
before going forward with the search of the files and review of the material that may be identified
as responsive, payment in full must be received.

Be advised that a search of any files or a particular file in which you may be mentioned
does not guarantee that records will be released, since some, all or portions of a record may be
withheld pursuant to exemptions of the FOIA.   Also, under the FOIA, once a requester obligates
themselves to pay fees, the amount of the fee or the balance of the fee becomes due and owing
and, until the balance is paid, a release is not made.   Also, if the requester does not pay once they
are informed of the fee for which the work that was performed, an agency is not obligated to
release responsive material or respond to any future requests received from the requester.

If you wish DEA to conduct any additional searches, please indicate in writing the file
number(s), whether you wish the field file or a Headquarters search, and remit the associated fee,
making the certified check or money order payable to the Treasury of the United States.   Upon
receipt of your payment, DEA will initiate further searches.   If a response is not received within
45 days of your receipt of this letter, it will be presumed that you do not wish that DEA conduct
the search of any of the additional files, and the processing and release of any responsive
materials.

Sincerely,


William C. Little, Jr.
Senior Attorney
Administrative Law Section

Juan B. Bordas                                                          Page 4
April 29, 2008


CCA CHRON
CCA FILE _____ 4/29/08
H:LIW\MyDocuments:lwassom/correspondence/bordasfeeltr.wpd 4/29/2008

# EXHIBIT L



**U. S. Department of J˽ ˽ce**
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*


Mr. Juan Bordas
#50700-004
FCI Miami
P.O. Box 779800
Miami, FL 33177

**MAY 1 5 2008**

    Re: *Juan Bordas v. Department of Justice, Drug Enforceement Administration,*
       Case No. 08-0339 JDB

Dear Mr. Bordas:

    Enclosed please find our letter to you dated April 29, 2008. The letter was returned to this office by the United States Postal Service since the letter was addressed incorrectly.


                    Sincerely,


                    William C. Little, Jr.
                    Senior Attorney
                    Administrative Law Section


Enclosure

CCA Chron
CCA File *JW 5/15/08*
Document name:H:MyDocuments:lwassom/correspondence/bordas2feeltr.wpd/5/15/2008

# EXHIBIT M

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Juan Bordas
#50700-004
FCI Miami
P.O. Box 779800
Miami, FL 33177

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____   □ Agent
                    □ Addressee

B. Received by (Printed Name)    C. Date of Delivery
R. Lawrence                      8/22/08

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:         □ No

3. Service Type
☑ Certified Mail    □ Express Mail
☑ Registered        □ Return Receipt for Merchandise
□ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
(Transfer from service label)

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

# EXHIBIT N



U. S. Department of Justice
Drug Enforcement Administration
Office of Chief Counsel
Administrative Law Section

*www.dea.gov*

JUL  9 2008

Mr. Juan Bordas
#50700-004
FCI Miami
P.O. Box 779800
Miami, FL 33177

Re: *Juan Bordas v. Department of Justice, Drug Enforcement Administration,*
    Case No. 08-0339 JDB
    DEA FOI Request No. 06-1455-P

Dear Mr. Bordas:

    Enclosed please find portions of two (2) pages, in further response to your Freedom of
Information/Privacy Act (FOIA/PA) request to the Drug Enforcement Administration (DEA)
dated August 10, 2006.  During a final litigation review, it has been determined that portions of
page 19, previously withheld in its entirety, and additional portions of page 21 could be released
to you.  DEA continues to withhold information pursuant to FOIA exemptions (b)(7)(C) and
(b)(7)(F), and PA exemption (j)(2).

                         Sincerely,

                         William C. Little, Jr.
                         Senior Attorney
                         Administrative Law Section

Enclosures

cc: CCA Chron
    CCA File
    Document name: H:/wclittle/MyDocuments/Litigation/Cases/A-C/SupRelLtr: 7/09/08

# EXHIBIT O

PAGE ITEMIZATION

PAGE NUMBER:   1
DOCUMENT TYPE: DEFENDANT DISPOSITION REPORT (DEA 210)

DATE:      FEBRUARY 25, 1981

( X ) RELEASED
(   ) WITHHELD

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 5 | THIRD-PARTY NAME | (b)(7)(C) (b)(7)(F) | NAME OF INDIVIDUAL |
| BLOCKS 24 & 25 | NAMES & SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

**PAGE ITEMIZATION**

**PAGE NUMBER:**   2 - 3
**DOCUMENT TYPE:** PERSONAL HISTORY REPORT (DEA 202)

**DATE:**       OCTOBER 2, 1980

                                        ( X ) **RELEASED**
                                        (   ) **WITHHELD**

   **TO:**  CRIMINAL INVESTIGATIVE FILE

   **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCKS 4, 42a, c | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
| BLOCKS 2, 40, 64 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP QUALITATIVE & QUANTITATIVE CRITERIA |
| BLOCKS 65, 66, 68, 69, 71 | NAMES AND SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

## PAGE ITEMIZATION

**PAGE NUMBER:**  4 - 5
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 AND 2 OF 2

**DATE:**    MARCH 10, 1999

(   ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| PAGE 1: BLOCK 3; PAGE 2: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5, 12 & 14; DETAILS: PARA 1-4; PAGE 2: PARA 5, 6; PAGES 1-2: BOTTOM MARGIN | NAMES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & INITIALS OF SPECIAL AGENTS |
| PAGE 1: BLOCKS 6; DETAILS: PARA 3; PAGE 2: PARA 5; INDEXING SECTION | THIRD-PARTY NAMES. INFORMATION AND IDENTIFIERS | (b)(7)(C) (b)(7)(F) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 2: INDEXING SECTION | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

PAGE ITEMIZATION

PAGE NUMBER:    6
DOCUMENT TYPE: REPORT OF INVESTIGATION (DEA 6)

DATE:      FEBRUARY 27, 1998

( X ) **RELEASED**
(   ) **WITHHELD**

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:   DEA SPECIAL AGENT

PURPOSE:   FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5,12&14; DETAILS: PARA 2; BOTTOM MARGIN | NAMES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & INITIALS OF SPECIAL AGENTS |
| BLOCK 6; DETAILS: PARA 3-5 | THIRD-PARTY NAMES and IDENTIFIERS | (b)(7)(C) (b)(7)(F) | NAMES OF AND INFORMATION RELATED TO THIRD-PARTIES |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration*, CA 08-0339 JDB

## PAGE ITEMIZATION

**PAGE NUMBER:**  7 - 8
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 AND 2 OF 2

**DATE:**    OCTOBER 14, 1980

( X ) **RELEASED**
(   ) **WITHHELD**

   **TO:**  CRIMINAL INVESTIGATIVE FILE

   **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| PAGE 1: BLOCK 4 PAGE 2: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5,9,12&14; DETAILS: PARA 2 | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES, SIGNATURES & INITIALS OF SPECIAL AGENTS AND SUPPORT PERSONNEL |
| PAGE 1: BLOCK 6; PAGE 2: BLOCK 3 | THIRD-PARTY NAMES | (b)(7)(C) (b)(7)(F) | NAME OF INDIVIDUAL |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration*, CA 08-0339 JDB

**PAGE ITEMIZATION**

**PAGE NUMBER:**  9 - 10
**DOCUMENT TYPE:** PERSONAL HISTORY REPORT (DEA 202)

**DATE:**    MARCH 13, 1998

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCKS 1, 43a | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
|  | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |
| BLOCKS 5,45&46 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP QUALITATIVE & QUANTITATIVE CRITERIA |
| BLOCKS 68,69,74 & 75 | NAMES AND SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

PAGE ITEMIZATION

**PAGE NUMBER:**  11 - 12
**DOCUMENT TYPE:** PERSONAL HISTORY REPORT (DEA 202)

**DATE:**     MARCH 13, 1998

( ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE DOCUMENT | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
| BLOCKS 1,12&43b | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |
| BLOCKS 5,45&46 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER CODES AND CRITERIA |
| BLOCKS 68, 69, 74, 75 | NAMES AND SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

## PAGE ITEMIZATION

**PAGE NUMBER:**  13 - 14
**DOCUMENT TYPE:** PERSONAL HISTORY REPORT (DEA 202)

**DATE:**    JULY 18, 1998

(   ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE DOCUMENT | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
| BLOCK 5 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 12&43b | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |
| BLOCKS 68,74 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  15 - 16
**DOCUMENT TYPE:** PERSONAL HISTORY REPORT (DEA 202)

**DATE:**    JULY 18, 1998

                                    (   ) **RELEASED**
                                    ( X ) **WITHHELD**

    **TO:**  CRIMINAL INVESTIGATIVE FILE

  **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE DOCUMENT | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C)<br>(b)(7)(F) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
| BLOCK 5 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP QUALITATIVE & QUANTITATIVE CRITERIA |
| BLOCKS 12, 43b | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |
| BLOCKS 68,74 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C)<br>(b)(7)(F) | NAMES OF SPECIAL AGENTS |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

**PAGE ITEMIZATION**

**PAGE NUMBER:**  17 - 18
**DOCUMENT TYPE:** PERSONAL HISTORY REPORT (DEA 202)

**DATE:**    MARCH 13, 1998

(   ) **RELEASED**
( X ) **WITHHELD**

    **TO:**  CRIMINAL INVESTIGATIVE FILE

   **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE DOCUMENT | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |
| BLOCKS 5, 45, 46 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP QUALITATIVE & QUANTITATIVE CRITERIA |
| BLOCKS 12, 43b | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |
| BLOCKS 68,69, 74, 75 | NAMES & SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

## PAGE ITEMIZATION

**PAGE NUMBER:**   19
**DOCUMENT TYPE:** ACQUISITION OF NON-DRUG PROPERTY AND REGULATORY SEIZURES
                   (DEA 7A)
**DATE:**          JUNE 24, 1997

                                        ( X ) **RELEASED**
                                        (   ) **WITHHELD**

    **TO:**   CRIMINAL INVESTIGATIVE FILE

  **FROM:**   DEA SPECIAL AGENT

**PURPOSE:**   FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 13-15,17, 18&20 | NAMES & SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |
| BLOCKS 9,10,12, 13,16&19 | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES AND INFORMATION RELATED TO A THIRD-PARTY |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

PAGE ITEMIZATION

PAGE NUMBER:   20
DOCUMENT TYPE: ACQUISITION OF NON-DRUG PROPERTY AND REGULATORY SEIZURES
                (DEA 7A)
DATE:        MARCH 19, 1998

( X ) RELEASED
(   ) WITHHELD

TO:  CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 5 | THIRD-PARTY NAME | (b)(7)(C) (b)(7)(F) | NAME OF INDIVIDUAL |
| BLOCKS 13-15,17 & 20 | NAMES & SIGNATURES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & SIGNATURES OF SPECIAL AGENTS |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

## PAGE ITEMIZATION

PAGE NUMBER:   21
DOCUMENT TYPE: ACQUISITION OF NON-DRUG PROPERTY AND REGULATORY SEIZURES
               (DEA 7A)
DATE:          SEPTEMBER 11, 1998

( X ) **RELEASED**
(   ) **WITHHELD**

TO:   CRIMINAL INVESTIGATIVE FILE

FROM:  DEA SPECIAL AGENT

PURPOSE:  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 13-15 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCKS 5,9,10, 13 | THIRD-PARTY NAMES & INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES OF & INFORMATION RELATED TO THIRD-PARTIES |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

**PAGE ITEMIZATION**

**PAGE NUMBER:**   22
**DOCUMENT TYPE:** ACQUISITION OF NON-DRUG PROPERTY AND REGULATORY SEIZURES
                  (DEA 7A)
**DATE:**        SEPTEMBER 11, 1998

                                        ( X ) RELEASED
                                        (   ) WITHHELD
      **TO:**  CRIMINAL INVESTIGATIVE FILE

    **FROM:**  DEA SPECIAL AGENT

**PURPOSE:** FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 13-15 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCKS 5, 9, 10, 13 | THIRD-PARTY NAMES & INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES OF & INFORMATION RELATED TO THIRD-PARTIES |

## PAGE ITEMIZATION

**PAGE NUMBER:**    23
**DOCUMENT TYPE:** ACQUISITION OF NON-DRUG PROPERTY AND REGULATORY SEIZURES
                   (DEA 7A)
**DATE:**          OCTOBER 30, 1998

                                              ( X ) **RELEASED**
                                              (   ) **WITHHELD**

     **TO:**  CRIMINAL INVESTIGATIVE FILE

   **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 5 | THIRD-PARTY NAME | (b)(7)(C) (b)(7)(F) | NAME OF INDIVIDUAL |
| BLOCKS 10,13-15 | NAMES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES & INITIALS OF SPECIAL AGENTS |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  24 - 25
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 AND 2 OF 2

**DATE:**    SEPTEMBER 14, 1998

(   ) **RELEASED**
( X ) **WITHHELD**

    **TO:**  CRIMINAL INVESTIGATIVE FILE

   **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| WHOLE REPORT | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 3; PAGE 2: BLOCK 2 | INTERNAL MARKINGS & IDENTI- FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCK 5;DETAILS: PARA 1 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| PAGE 1: BLOCKS 6, 10; SYNOPSIS; DETAILS: PARA 1,2; PAGE 2: PARA 2 | THIRD-PARTY NAMES. INFORMATION AND IDENTIFIERS | (b)(7)(C) (b)(7)(F) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD- PARTIES |

PAGE ITEMIZATION

**PAGE NUMBER:**  26
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6) PAGE 1 OF 3

**DATE:**    SEPTEMBER 14, 1998

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5, 12 & 14; DETAILS: PARA 1-3 | NAMES OF LAW ENF.  PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCK 6; DETAILS: PARA 1, 2 | THIRD-PARTY NAMES. INFORMATION AND IDENTIFIERS | (b)(7)(C) (b)(7)(F) | NAMES AND IDENTIFIERS OF AND INFORMATION RELATED TO THIRD-PARTIES |
| DETAILS: PARA 1, 2 | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

**PAGE ITEMIZATION**

**PAGE NUMBER:**   27
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6a) PAGE 2 OF 2

**DATE:**      SEPTEMBER 14, 1998

                                        (   ) **RELEASED**
                                        ( X ) **WITHHELD**

      **TO:**  CRIMINAL INVESTIGATIVE FILE

    **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCK 2 | THIRD-PARTY NAME | (b)(7)(C) | NAME OF THIRD-PARTY |
| PARA 4-7 | NAMES OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES OF AND INFORMATION RELATED TO THIRD-PARTIES |
| | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY A CONFIDENTIAL SOURCE |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  28
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6a) PAGE 3 OF 3

**DATE:**    SEPTEMBER 14, 1998

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| CUSTODY OF EVIDENCE: | NAMES OF LAW ENF.  PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES OF SPECIAL AGENTS |
| BLOCKS 2; CUSTODY OF EVIDENCE: | THIRD-PARTY NAMES, INFORMATION AND IDENTIFIERS | (b)(7)(C) (b)(7)(F) | NAMES OF AND INFORMATION RELATED TO THIRD-PARTIES |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  29
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**   MARCH 19, 1998

( X )  **RELEASED**
(   )  **WITHHELD**

   **TO:**  CRIMINAL INVESTIGATIVE FILE

 **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5,12&14; DETAILS: PARA 1,NON-DRUG EXHIBITS: PARA 1; BOTTOM MARGIN | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES, SIGNATURES & INITIALS OF SPECIAL AGENTS, LAW ENFORCEMENT OFFICER & SUPPORT PERSONNEL |
| BLOCK 6 | THIRD-PARTY NAMES AND IDENTIFIERS | (b)(7)(C) (b)(7)(F) | NAME OF THIRD-PARTY AND THIRD-PARTY NADDIS IDENTIFIER CODE |
|  | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | NADDIS IDENTIFIER CODES |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

**PAGE ITEMIZATION**

**PAGE NUMBER:**   30
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6)

**DATE:**    MARCH 18, 1998

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**   CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| BLOCK 4 | INTERNAL MARKINGS & IDENTIFIER | (b)(2) | G-DEP IDENTIFIER CODE |
| BLOCKS 5,12&14; DETAILS: PARA 1,3; BOTTOM MARGIN | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES, SIGNATURES & INITIALS OF SPECIAL AGENTS |
| BLOCKS 6,10; DETAILS: PARA 1, 3; INDEXING SECTION | THIRD-PARTY NAMES | (b)(7)(C) (b)(7)(F) | NAMES OF AND INFORMATION RELATED TO THIRD-PARTIES INDIVIDUAL |
| BLOCK 6; INDEXING SECTION | INTERNAL MARKINGS, IDENTIFIERS, AND OR PROCEDURES | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

**PAGE ITEMIZATION**

**PAGE NUMBER:**  31 - 33
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 AND 2 OF 2

**DATE:**    OCTOBER 10, 1997

(   ) **RELEASED**
( X ) **WITHHELD**

     **TO:**  CRIMINAL INVESTIGATIVE FILE

   **FROM:**  OCDETF SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY A CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4 PAGES 2&3: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5,9,12&14; SYNOPSIS; BOTTOM MARGIN | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES, SIGNATURES & INITIALS OF SPECIAL AGENT, OCDETF SPECIAL AGENTS, IRS SPECIAL AGENT & AND SUPPORT PERSONNEL |
| PAGE 1: BLOCK 6, 10; SYNOPSIS; DETAILS: PARA 1-3;PAGE 2: BLOCK 3; PARA 4-9; PAGE 3: BLOCK 3; PARA 9-11; INDEXING SECTION | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES OF AND INFORMATION RELATED TO THIRD-PARTIES |
| PAGE 1: BLOCK 6; PAGE 3: INDEXING SECTION | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

**PAGE ITEMIZATION**

**PAGE NUMBER:**  34 – 36
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 – 3 OF 3

**DATE:**    JUNE 24, 1997

                                        (    ) **RELEASED**
                                        ( X ) **WITHHELD**

   **TO:**  CRIMINAL INVESTIGATIVE FILE

  **FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES OF AND INFORMATION RELATED TO THIRD-PARTIES |
| | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY A CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4; PAGES 2 & 3: BLOCK 2 | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |
| PAGE 1: BLOCKS 5,9,12&14; DETAILS: PARA 1; BOTTOM LEFT MARGIN; PAGE 2: CUSTODY OF EVIDENCE: PARA 1-5; BOTTOM MARGIN | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES, SIGNATURES & INITIALS OF SPECIAL AGENTS, IRS SPECIAL AGENT & AND SUPPORT PERSONNEL |
| PAGE 1: BLOCK 6; PAGES 2,3: INDEXING SECTION | INTERNAL MARKINGS, IDENTI-FIERS, AND OR PROCEDURES | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration*, CA 08-0339 JDB

**PAGE ITEMIZATION**

**PAGE NUMBER:**  37 – 39
**DOCUMENT TYPE:** REPORT OF INVESTIGATION (DEA 6 & 6a) PAGES 1 – 3 OF 3

**DATE:**     APRIL 29, 1997

(   ) **RELEASED**
( X ) **WITHHELD**

**TO:**  CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|---|---|---|---|
| WHOLE REPORT | THIRD-PARTY NAMES AND INFORMATION | (b)(7)(C) (b)(7)(F) | NAMES OF AND INFORMATION RELATED TO THIRD-PARTIES |
| | IDENTITY OF A CONFIDENTIAL SOURCE | (b)(7)(D) | IDENTITY OF CONFIDENTIAL SOURCE |
| | INFORMATION FROM A CONFIDENTIAL SOURCE | (b)(7)(D) | INFORMATION PROVIDED BY CONFIDENTIAL SOURCE |
| PAGE 1: BLOCK 4; PAGES 2 & 3: BLOCK 2 | INTERNAL MARKINGS & IDENTI- FIER | (b)(2) | G-DEP IDENTIFIER CODES |
| PAGE 1: BLOCKS 5,9,11,12&14; SYNOPSIS | NAMES, SIGNATURES & INITIALS OF LAW ENF. PERSONNEL | (b)(7)(C) (b)(7)(F) | NAMES, SIGNATURES & INITIALS OF SPECIAL AGENTS, IRS SPECIAL AGENT, LAW ENFORCEMENT OFFICER, AND SUPPORT PERSONNEL |
| PAGE 1: BLOCK 6; PAGE 3: INDEXING SECTION | INTERNAL MARKINGS, IDENTI- FIERS, AND OR PROCEDURES | (b)(2) | THIRD-PARTY NADDIS IDENTIFIER CODES |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration*, CA 08-0339 JDB

**PAGE ITEMIZATION**

**PAGE NUMBER:**    40
**DOCUMENT TYPE:** PHOTOGRAPH

**DATE:**    NONE

( X ) **RELEASED**
(   ) **WITHHELD**

**TO:**   CRIMINAL INVESTIGATIVE FILE

**FROM:**  DEA SPECIAL AGENT

**PURPOSE:**  FURTHERANCE OF A CRIMINAL INVESTIGATION

| ITEM | MATERIAL DELETED | EXEMPTION | CONTENTS |
|------|------------------|-----------|----------|
| MIDDLE OF PAGE | INTERNAL MARKINGS & IDENTI-FIER | (b)(2) | G-DEP IDENTIFIER CODE |

*Juan Bordas v. Department of Justice, Drug Enforcement Administration, CA 08-0339 JDB*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUAN BORDAS
     Plaintiff,

V.                                        Civil Action No. 08-00339 (JDB)

DEPARTMENT OF JUSTICE
d/b/a/ DRUG ENFORCEMENT ADMINISTRATION.

ORDER

     Upon consideration of defendant's motion to dismiss and for summary judgment, and the

response thereto, it is hereby

     ORDERED that the motion is GRANTED and the complaint is DISMISSED.


Date:             _____
                    UNITED STATES DISTRICT COURT JUDGE